In re Edward R. SZWYD, Debtor.

United States of America, Appellant,

v.

Jack E. Houghton, Jr., Chapter
7 Trustee and Edward R.
Szwyd, Appellees.

No. 08–cv–30194–MAP.

United States District Court,
D. Massachusetts.

June 30, 2009.

Richard I. Isacoff, Richard L. Isacoff, P.C., Pittsfield, MA, for Debtor.

Alex T. Case, U.S. Department of Justice, Washington, DC, for Appellant.

Jack E. Houghton, Jr., Pittsfield, MA, pro se.

## MEMORANDUM AND ORDER REGARDING BANKRUPTCY APPEAL (Dkt. No. 3)

PONSOR, District Judge.

### I. BACKGROUND

This is an appeal of an order of the bankruptcy court dated April 14, 2008, ordering the United States to marshal certain of the debtor's assets to satisfy its tax liens in order to preserve some funds for unsecured creditors.

The Debtor, Edward Szwyd, filed for bankruptcy protection under Chapter 13 of the Bankruptcy Code. The case was converted to Chapter 7, and the appellee was appointed as trustee. At the time of his petition, the Debtor owned two pieces of real property. One was a parcel located at 80 Maple Avenue in Great Barrington, Massachusetts (the "Maple Avenue Property"). The second piece of real property is his residence, located at 366 North Plain Road in Great Barrington, Massachusetts (the "Residence"), which has a current market value of $450,000 and is subject to a first mortgage of approximately $225,000 held by Greylock Federal Credit Union.

Title to the Residence was, at least nominally, held by a trust when the Debtor filed for bankruptcy. The bankruptcy court previously ruled, and the Bankruptcy Appellate Panel affirmed, that the trust was terminated by operation of Massachusetts law prior to the bankruptcy filing when the debtor became the sole trustee and sole beneficiary of the trust, such that his legal and equitable interests merged. *Houghton v. Szwyd (In re Szwyd)*, 370 B.R. 882 (1st Cir. BAP 2007). As a result of these earlier proceedings, Debtor's residence is protected by the Massachusetts Homestead Exemption, Mass. Gen. Laws ch. 188, §§ 1–10, from the claims of most creditors. It is undisputed that federal tax liens filed against the property prior to the petition date are executable despite the homestead exemption.

The Trustee sold the Maple Street Property for $72,000. After paying the mortgage balance, closing costs, and his own interim fees, the Trustee was left with $25,000. Prior to the date the Debtor filed for bankruptcy protection, the United States had recorded two tax liens now totaling $133,359.88. Much of the Debtor's tax deficiency is attributable to his practice of withholding for himself money from his employees' paychecks that should have been paid to the IRS. The Debtor also owes his fifteen unsecured creditors a total of $537,491.37.

The Trustee petitioned the bankruptcy court to require the United States to marshal its collateral so that its tax liens would be paid out of proceeds from the sale of the Residence, allowing the other creditors to split the proceeds from the sale of the Maple Street Property. The government opposed this approach, preferring to take the entire Maple Street Property fund, even though there would still be a deficiency of over $100,000. In order to satisfy that deficiency the IRS would need to seek a sale of the Residence. The proceeds from such a sale would, almost certainly, satisfy the full amount of the tax liens without regard to the Maple Street Property fund. Thus, the government is in a position where it can receive full payment of the tax liens whether or not it receives any of the Maple Street Property proceeds, while the Debtor's numerous other, unsecured creditors will receive nothing unless the government is forced to marshal.

## II. DISCUSSION

■ This court has jurisdiction to review Bankruptcy Judge Boroff's order requiring the United States to marshal pursuant to 28 U.S.C. § 158(a). As discussed below, this court rejects the government's assertion that sovereign immunity prevents both the bankruptcy court and this court from exercising jurisdiction over this matter. Whether the bankruptcy court has power to order the government to marshal is a question of law; therefore, this court reviews the bankruptcy order de novo. *Brandt v. Repco Printers & Lithographics (In re Healthco Int'l)*, 132 F.3d 104, 107 (1st Cir.1997).

■ Marshaling is an equitable doctrine that prevents "a senior lienor from destroying the rights of a junior lienor or a creditor having less security," by requiring that, where there is one creditor who can satisfy his claim from two funds and another creditor who can satisfy his claims from only one of the two funds, the first creditor must look first to the fund that only it can access. *Meyer v. United States*, 375 U.S. 233, 237, 84 S.Ct. 318, 11 L.Ed.2d 293 (1963). The power of federal courts, including bankruptcy courts, to order marshaling has long been recognized. *Id.; In re Morahan*, 53 B.R. 489, 492 (D.Me.1985); *In re Larry's Equip. Serv., Inc.*, 23 B.R. 132, 133 (Bankr.D.Me.1982). A trustee in bankruptcy may seek marshaling on behalf of unsecured creditors, who cannot do so on their own, based on his or her status as a hypothetical lien holder as of the date of the petition. *In re America's Hobby Center*, 223 B.R. 275, 287 (Bankr.S.D.N.Y. 1998) (observing that a trustee "endowed with the status of a secured creditor, may" seek marshaling); *see also* 11 U.S.C. § 544(a) (granting to trustees the rights and powers of the hypothetical holder of a judicial lien as of the petition date).

■ Though federal courts invoke the doctrine, state law is generally understood to govern its application. *In re Dig It, Inc.*, 129 B.R. 65, 66 (Bankr.D.S.C.1991). In Massachusetts the doctrine can be applied where there is "(1) a common debtor; (2) two separate funds, one of which is a common fund available to both creditors and one of which is available only to the senior creditor; and (3) no detriment or prejudice to the senior creditor if he is required to pursue the fund to which he alone can look." *In re T.H.B. Corp.*, 85 B.R. 192, 196 (Bankr.D.Mass.1988) (citations omitted).

■ As Judge Boroff correctly concluded, each of these elements is met in this case. As to the first element, there is no controversy: Szwyd is the debtor. One of the funds, the proceeds from the sale of the Maple Street Property, is common and available to both the unsecured creditors,

through the Trustee, and the government. The second fund, proceeds of a future sale of the Residence, is only available to the government. Under Massachusetts law, the state's Homestead Exemption permits "sale for taxes," but does not permit sale for the payment of general debts. Mass. Gen. Laws ch. 188, § 1.

As to the third element, the value of the Residence and the Debtor's equity are sufficient that the government will be able to satisfy the full amount of its tax lien, and at least some amount of the accruing interest, from the proceeds of the sale of the Residence. Though there may be some hurdles to obtaining the sale of the Residence, the sale of the Residence will yield the government more than the $25,000 available following the sale of the Maple Street Property. Thus, the third element is satisfied as to the only relevant senior lienholder in this analysis: the United States government.

The government argues that the Debtor should also be considered a creditor with an interest in the Residence, one who would be prejudiced by the order to marshal because he would be entitled to any funds remaining after all the tax liens have been paid. The government has cited no authority to support this position, and its argument is at odds with the very concept of marshaling as recognized by Massachusetts law. Marshaling will almost always result in a greater amount of funds flowing to creditors, with a smaller residue for the Debtor. This virtually inevitable reality cannot form the basis of any legitimate objection to marshaling.

■ Finally, it is worth noting again that marshaling is an equitable doctrine. Even where the three elements are met, a court is not required to order a senior lienor to marshal. In reaching his decision, Bankruptcy Judge Boroff considered the Debtor's starkly reprehensible conduct—his theft of his employees' withheld taxes—when concluding that the tax liens should be fully paid from the proceeds of the sale of his residence. This court agrees that equitable considerations powerfully support the underlying decision here.

Having concluded that Massachusetts law permits marshaling in this case, the court turns to the government's federal law objections to its application.

In its appeal of Judge Boroff's order, the government argues (1) that sovereign immunity shields the United States from marshaling; (2) an order requiring the government to marshal violates the Anti–Injunction Act; and (3) judicial estoppel should have prevented the Trustee from seeking marshaling because he had previously sought payment pursuant to 28 U.S.C. § 724(b).[1]

*A. Sovereign Immunity.*

■ Section 106(a) of the Bankruptcy Code waives sovereign immunity as to other enumerated sections of the Code. 11 U.S.C. § 106. "There is no doubt that § 106 is an express waiver of sovereign immunity," sufficient to meet the stringent standard for finding such a waiver. *United States v. Torres (In re Torres),* 432 F.3d 20, 24 (1st Cir.2005). Thus, the relevant question is whether one of the sections

---

1. The government has also asked this court to vacate a portion of Note 2 of Bankruptcy Judge Boroff's Memorandum of Decision on Defendants' Motion for Reconsideration asserting that it unfairly impugns the reputations of the government's lawyers. *Houghton*

*v. United States Dep't of Treasury IRS (In re Szwyd),* 394 B.R. 242, 244 n. 2 (Bankr. D.Mass.2008). Having reviewed the language the government finds objectionable, this court finds no basis to take the requested action.

listed in § 106(a) gives bankruptcy courts the equitable power to order marshaling. In determining the scope of the § 106(a) waiver the First Circuit looks to see whether the relief sought was understood to be available under one of the enumerated sections in 1994 when § 106(a) was amended to include clear waiver language. *Id.* at 25.

The government's arguments notwithstanding, two enumerated sections together authorize the bankruptcy court's order. First, § 105 gives bankruptcy courts broad equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). By 1994 these powers included the power to order a party to marshal assets. *See e.g. Meyer v. United States,* 375 U.S. 233, 237, 84 S.Ct. 318, 11 L.Ed.2d 293 (1963). Second, § 544(a) has long given a trustee the rights and responsibilities of a lien creditor, which include the ability to seek equitable remedies such as marshaling. 11 U.S.C. § 544(a); *In re Vermont Toy Works, Inc.,* 82 B.R. 258 (Bankr. D.Vt.1987); *cf. In re Spectra Prism Indus., Inc.,* 28 B.R. 397, 399 (9th Cir. BAP 1983) (ruling that § 544 gave a Trustee authority to oppose an order to marshal based on prejudice to the estate). Given the established nature of the marshaling doctrine in the bankruptcy context, and its authorization through two sections listed in § 106(a), this court concludes that the unequivocal waiver of sovereign immunity in § 106(a) encompasses an order compelling the United States to marshal assets.

## B. *The Anti–Injunction Act.*

The government has also invoked the Anti–Injunction Act, arguing that it bars the bankruptcy court's order to marshal. The Anti–Injunction Act provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any persons," subject to certain exceptions not applicable here. 26 U.S.C. § 7421(a). Its applicability in the bankruptcy context is disputed. In one line of cases, cited by the government, courts have from time to time invoked the Anti–Injunction Act to prevent bankruptcy court actions, based on the absence of an express provision in the Bankruptcy Code superceding the Anti–Injunction Act. *American Bicycle Ass'n v. United States (In re American Bicycle Ass'n),* 895 F.2d 1277 (9th Cir.1990); *In re American Hardwoods,* 885 F.2d 621 (9th Cir.1989); *Clark v. Baker (In re Heritage Village Church & Missionary Fellowship),* 851 F.2d 104, 105 (4th Cir.1988); *LaSalle Rolling Mills v. United States Dep't of Treasury (In re La Salle Rolling Mills),* 832 F.2d 390 (7th Cir.1987); *In re Becker's Motor Transp.,* 632 F.2d 242 (3d Cir.1980).

It is significant that only one of the cases cited, *In re Becker's Motor,* involved an action by the bankruptcy court aimed at preventing the IRS from collecting directly from the debtor. The others cases all involved IRS actions aimed at collecting taxes from individuals other than the debtor before the bankruptcy court. It is not hard to see how reviewing courts might be much more concerned about Bankruptcy orders that might interfere with IRS actions against third parties.

■ The more relevant and persuasive line of cases reasons that the bankruptcy code is a "complete scheme governing bankruptcy which overrides the general policy" embodied in the Anti–Injunction Act. *Bostwick v. United States,* 521 F.2d 741, 744 (8th Cir.1975). The First Circuit has not weighed in on this issue. Having reviewed the reasoning in both *Becker's Motor* and *Bostwick,* this court agrees with Judge Boroff and Judge Seitz, who wrote a concurring opinion in *Becker's Mo-*

*tor*, that the reasoning in *Bostwick* is more sound. The order to marshal was issued following a weighing of the equities in this case and was meant to organize the Debtor's assets sensibly to provide some relief to the unsecured creditors. The underlying order was obviously not intended to "prevent the Internal Revenue Service from assessing and collecting income taxes." *McCarthy v. Marshall*, 723 F.2d 1034, 1038 (1st Cir.1983). Indeed, it fully respected the right of the United States to obtain complete satisfaction of its lien. As Bankruptcy Judge Boroff noted, if the United States is unable to satisfy its tax debt from the Residence, it will be able to reach the funds in the bankruptcy estate. *Houghton v. United States Dep't of Treasury IRS (In re Szwyd)*, 394 B.R. 242, 248 n. 8 (Bankr.D.Mass.2008). The court thus concludes that the bankruptcy court's order is not inconsistent with the Anti–Injunction Act.

### C. *Judicial Estoppel.*

■■■■■ The doctrine of judicial estoppel prevents "a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Thore v. Howe*, 466 F.3d 173, 181 (D.Mass.2006) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)). The two positions adopted by a party must be directly inconsistent for judicial estoppel to apply. *Id.* at 182. The government asserts that the Trustee has taken directly inconsistent positions by asking the court to order a different sequence of distribution than that set out in 11 U.S.C. § 724, after relying on that section when seeking interim compensation from the Maple Street Property fund.

The government's argument is unpersuasive for the simple reason that the Trustee's positions were not inconsistent.

The Trustee did not argue that § 724 would not apply if the Maple Street Property fund was the only one available. Nor did he deny the validity of the government's tax lien. He merely requested that the government satisfy its lien from another available source, one it must reach in order to be fully paid; that position is not inconsistent with § 724.

### III.  *CONCLUSION*

While the decision detailed above is anchored on what is, at least for the court, the fairest and most compelling interpretation of the law, a question still remains. Why is the government, whose mission is to protect the interests of the citizenry, ignoring those interests in the name of a dubious technicality, and being so petty? It is undisputed that the government's claim can be entirely satisfied out of the fund to which it alone has access. Taking this approach would leave a pittance for a very modest distribution to the unsecured creditors. Yet the government insists, for no apparent practical reason, on snatching even this away. Why is the government playing the proverbial dog in the manger?

When the court at oral argument directed this question (in essence) to government counsel, no substantive response was offered. Counsel merely reiterated the principle that the bankruptcy court in this context lacked the power to order the government to be sensible and humane, and, if a precedent were established recognizing this power, unspecified but dreadful consequences might result. It appears counsel forgot that sometimes the best way to avoid an unhelpful precedent is to exercise common sense.

For the reasons set forth above, the ruling of the bankruptcy judge dated April 14, 2008 is hereby AFFIRMED. This ap-

peal is ordered DISMISSED, and the case may now be closed.

It is So Ordered.