In re Coby R. DUFFIN and Jeanie Marie Duffin, Debtors.

Stephen W. Rupp, Trustee, Appellant,

v.

Coby R. Duffin and Jeanie Marie Duffin, Appellees.

BAP No. UT–10–023.
Bankruptcy No. 09–28879.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Sept. 19, 2011.

Stephen W. Rupp, Trustee (Jamie L. Nopper and Michelle W. Kasteler of McKay, Burton & Thurman, Salt Lake City, UT, with him on the brief), for Appellant.

Geoffrey C. Dietrich of G.C. Dietrich Law, P.C., Salt Lake City, UT, for Appellees.

Before CORNISH, Chief Judge, BROWN, and KARLIN, Bankruptcy Judges.

BROWN, Bankruptcy Judge.

The issue before this Court is whether the bankruptcy court properly allowed debtors Coby and Jeanie Duffin ("Debtors") to claim a Utah state law exemption in proceeds and avails of their unmatured life insurance policies, including payments made on the policies in the year preceding their bankruptcy filing. Appellant Stephen W. Rupp, Chapter 7 trustee ("Trustee") contends the bankruptcy court incorrectly interpreted the Utah exemption statute and that the exemption should not extend to premium payments made within one year of commencement of Debtors' bankruptcy case. For the following reasons, we REVERSE the decision of the bankruptcy court.

## I. Background

The Debtors filed a Chapter 7 bankruptcy petition on August 20, 2009. In their schedules, the Debtors disclosed ownership of two $250,000 life insurance policies,

having a combined cash value of $8,500. The parties stipulated that, during the year prior to the petition date, Debtors made monthly premium payments on the policies totaling $2,712. The Debtors claimed an exemption for the policies under a Utah statute that provides an exemption for the "proceeds and avails of any unmatured life insurance contracts owned by the debtor ... excluding any payments made on the contract during the one year immediately preceding a creditor's levy or execution."[1] The Trustee objected to the Debtors' claimed exemption, arguing that, while the value of the policies was covered under the statute, the exemption did not extend to the $2,712 the Debtors paid in premiums in the year prior to bankruptcy. The Debtors apparently conceded that a portion of the $2,712 was non-exempt under the statute, but argued that only those premium payments that were allocated to the investment portion of the policies should be excluded. The bankruptcy court rejected both parties' arguments, holding that the Debtors were entitled to claim an exemption for the entire $2,712, along with the value of the policies. The Trustee moved for post-judgment relief, which the bankruptcy court also denied.

## II. Standard of Review

■ This appeal involves interpretation of a statute, which is a matter of law this Court reviews de novo.[2] A bankruptcy court's denial of a motion to alter or amend a judgment under Rule 59(e) or denial of a motion to reconsider under Rule 60(b) is reviewed for an abuse of discretion.[3] "An abuse of discretion may occur if a court bases its ruling on a view of the law that is erroneous."[4]

## III. Bankruptcy Court Decision

The bankruptcy court issued two written orders regarding the Debtors' claimed exemption. In the first order ("Duffin I"), the court rejected the Trustee's interpretation of the Utah life insurance exemption.[5] The court held that the plain language of the statute only excludes payments made on life insurance contracts during the one year immediately preceding "a creditor's levy or execution." No actual creditor had executed or levied on the Debtors' assets prior to their bankruptcy filing.[6] Following a strict interpretation, the court declined to read additional "triggering events," such as a bankruptcy filing, into the second clause of the statute. The bankruptcy court compared the life insurance exemption to a neighboring subsection of the Utah exemptions statute, which grants an exemption in funds contributed into various types of retirement plans, except for any amount contributed within one year "before a debtor files for bankruptcy."[7] Based on the rule of statutory construction known as *expressio unius est exclusio alterius,* the bankruptcy court found it significant that the Utah legislature included an explicit bankruptcy filing

1. Utah Code Ann. § 78B-5-505(1)(a)(xiii).

2. *In re Sun 'N Fun Waterpark LLC,* 408 B.R. 361, 366 (10th Cir. BAP 2009).

3. *Ogden v. San Juan Cnty.,* 32 F.3d 452, 455 (10th Cir.1994); *State Bank of S. Utah v. Gledhill (In re Gledhill),* 76 F.3d 1070, 1080 (10th Cir.1996).

4. *In re Blagg,* 223 B.R. 795, 802 (10th Cir. BAP 1998).

5. *In re Duffin,* No. 09-28879, 2009 WL 4809640, at *3 (Bankr.D.Utah Dec. 9, 2009).

6. *Id.* (citing Utah Code Ann. § 78B-5-505(1)(a)(xiii)).

7. *Id.* (citing Utah Code Ann. § 78B-5-505(1)(b)(ii)).

limitation in one section of the same statute, but omitted it in the life insurance subsection. The bankruptcy court concluded that this disparity in statutory language dispelled any argument that the Utah legislature meant to include the event of a bankruptcy filing as a triggering event for the exception to the life insurance exemption. In fact, the retirement plan exemption subsection preceded the present version of the life insurance exemption.[8] It is, therefore, reasonable to assume that the Utah legislators made a conscious choice to refer to "levy and execution" rather than a "bankruptcy filing," because they had already made reference to a bankruptcy filing in the earlier retirement plans subsection.

Shortly after the issuance of *Duffin I*, the Trustee filed his Motion under Federal Rules of Civil Procedure 59 and 60 seeking relief from, or to alter or amend, the judgment ("Relief Motion").[9] In the Relief Motion, the Trustee complained that *Duffin I* was at odds with the Debtors' prior concession that some portion of the premium payments was not exempt, and that the Trustee had not been given an opportunity to argue the applicability of his strong arm powers under 11 U.S.C. § 544.[10] The bankruptcy court held a hearing on the Relief Motion, during which the Trustee was given a full opportunity to present his arguments under § 544. The court subsequently issued a second order denying the Relief Motion ("*Duffin II*").[11]

In *Duffin II* bankruptcy court reiterated its previous interpretation of Utah's exemption statute. The bankruptcy court also rejected the Trustee's argument that his powers under § 544(a)(2) triggered the one-year exception to the Utah life insurance exemption. The court reasoned that § 544(a)(2) does not give the Trustee the powers of a creditor that has levied or executed on the debtor's property. Rather, the court held that it gives the Trustee the rights and powers of a creditor that obtains a writ of execution "that is returned unsatisfied."[12] If a writ of execution is returned unsatisfied, the bankruptcy court concluded, it means there was no property available for levy, no lien was created on any property, and the creditor has exhausted his legal remedies. As such, the court concluded that the Trustee's powers under § 544(a)(2) could not invoke the one-year exception under Utah law.

Further, the bankruptcy court emphasized that a trustee's powers under § 544(a) are purely hypothetical and based on fictional events, whereas the exemption statute comes into play as the result of actual events. The court disagreed with the general proposition that § 544, which gives a trustee avoidance powers, provides a basis for objecting to exemptions. The court found a conflict between the spirit of § 522(b), which specifically allows debtors to claim state law exemptions, and employing the fiction created by § 544 to defeat those very exemptions.

---

**8.** The retirement plan exemption has existed in the Utah statute in substantially the same form since at least 1989. *See* Utah Code Ann. § 78–23–5(1)(j)(ii) (1989) (180–day limitation). The Utah legislature re-wrote the life insurance exemption in 2005 to include the one-year limitation and consolidated it into the larger section on exemptions. *See* Utah Code Ann. § 78–23–5(1)(a)(xiii) (2005).

**9.** *Motion Under FRCP Rule 60 for Relief From the Court's Memorandum Decision and Order*

*and Motion Under FRCP 59 to Alter or Amend the Order and/or for a New Hearing*, in Appellant's Appx. at 87–91.

**10.** Unless otherwise specified, all references to "Code", "Section," and "§" are to Title 11, United States Code.

**11.** *In re Duffin*, 441 B.R. 692 (Bankr.D.Utah 2010).

**12.** *Id.* at 697 (citing 11 U.S.C. § 544(a)(2)).

## 824

### IV. Discussion

#### A. Due Process

■ On appeal, the Trustee's first argument is that he was denied due process of law when the bankruptcy court issued *Duffin I* because that order allowed the Debtors' exemption based on a interpretation of the Utah statute that was not argued by the parties. The Trustee characterizes this as the bankruptcy court issuing an order "based solely on a new issue that was raised sua sponte by the court, not previously raised or brought up in the parties' pleadings or at hearing, and not otherwise briefed or heard."[13]

■ In this context, the Court views as inapplicable the general principle that "[a] court may not, without the consent of all persons affected, enter a judgment which goes beyond the claim asserted in the pleadings."[14] The bankruptcy court's decision did not go beyond the claim asserted in the pleadings. Instead, both the *Duffin I* and *Duffin II* orders addressed whether Debtors were entitled to claim an exemption under Utah Code Ann. § 78B–5–505(1)(a)(xiii). The pleadings required the bankruptcy court to interpret the statute and that is precisely what the court did. The fact that the bankruptcy court ultimately interpreted the exemption statute in a manner at odds with the interpretation offered by both parties does not constitute a denial of due process.[15] More-

over, the bankruptcy court was not bound by the Debtors' apparent concession that they could not exempt all premium payments made in the year prior to bankruptcy. "[I]t is well-settled that a court is not bound by stipulations of the parties as to questions of law."[16] To the extent the Trustee is arguing he was denied the opportunity to make arguments regarding the application of § 544, that notion is belied by the record. The Trustee raised his § 544 arguments in his Relief Motion and presented oral arguments to the bankruptcy court at the hearing on that Motion. The bankruptcy court then fully and carefully considered the Trustee's arguments on the merits in *Duffin II*. Thus, the bankruptcy court afforded the Trustee an adequate opportunity to be heard and this Court holds the basic requirements of due process have been satisfied.

#### B. "Execution or Levy"

■ The key phrase of the Utah exemption statute at issue here is "excluding any payments made on the contract during the one year immediately preceding a creditor's levy or execution."[17] Like the bankruptcy court, this Court sees no ambiguity in this clause. The Utah exemption statute defines the term "levy" as "the seizure of property pursuant to any legal process issued for the purpose of collecting an unsecured debt."[18] The term "execution" is not specifically defined by the exemption statute, but must mean something different from levy.[19] "[W]hen a word is not

---

13. Brief of Appellant, at 8.

14. Brief of Appellant, at 9 (citing *Am. Prairie Constr. Co. v. Hoich*, 560 F.3d 780, 791 (8th Cir.2009)).

15. *See In re C.W. Mining Co.*, 625 F.3d 1240, 1244 (10th Cir.2010) (due process requires notice and a meaningful opportunity to be heard); *Pugel v. Bd. of Trs.*, 378 F.3d 659, 666–67 (7th Cir.2004) (due process does not require favorable result).

16. *Koch v. United States*, 47 F.3d 1015, 1018 (10th Cir.1995) (quoting *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1477 n. 1 (9th Cir.1986)).

17. Utah Code Ann. § 78B–5–505(1)(a)(xiii).

18. Utah Code Ann. § 78B–5–502(5).

19. *See In re Lanning*, 545 F.3d 1269, 1279 (10th Cir.2008), *aff'd,* —— U.S. ——, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010) ("'[A] cardinal

defined by statute, we normally construe it in accord with its ordinary or natural meaning." [20] The Utah Rules of Civil Procedure provide for writs of execution.[21] Under those rules, an execution is the formal document issued by a court that authorizes a sheriff to levy or seize the property of a judgment debtor.[22] In other words, an execution is one type of "legal process" (referred to in the statutory definition for "levy") by which a creditor is able to levy property to satisfy an unsecured debt.[23] To obtain a writ of execution, a plaintiff with a valid judgment must file an application indicating the amount of his judgment and the location and value of the property he wants seized.[24] The judgment debtor then has the opportunity to file a reply and request a court hearing.[25] It is undisputed that there was no actual creditor with a judgment against Debtors, and hence no issuance of a writ of execution, nor an actual levy of the Debtors' property.

■ Resolution of this matter then turns on an interpretation of the Trustee's hypothetical powers under § 544(a) and whether these powers are sufficient to invoke the exception to the exemption. Section 544(a)(2) provides that:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, **an execution against the debtor that is returned unsatisfied at such time,** whether or not such a creditor exists[.] [26]

The bankruptcy court held that the "rights and powers" granted the Trustee under this section did not trigger the exception in the Utah exemption statute because under § 544(a)(2), the Trustee only holds an execution "returned unsatisfied." The Utah statute, the bankruptcy court concluded, requires an execution *satisfied* by an actual levy.

Under Utah law, writs of execution and levy typically go hand in hand. The creditor obtains a writ of execution, and then the sheriff levies or seizes the property identified in the writ. Not every writ of execution, however, necessarily results in a levy of property. A judgment debtor may challenge the writ, and if the court deter-

principle of statutory construction [is] that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (quoting *TRW Inc. v. Andrews,* 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001))).

**20.** *Sutton v. United Air Lines, Inc.,* 130 F.3d 893, 898 (10th Cir.1997), *aff'd,* 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) (quoting *Smith v. United States,* 508 U.S. 223, 228, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993)).

**21.** *See* Utah R. Civ. P. 64E.

**22.** Utah R. Civ. P. 64E(a) ("A writ of execution is available to seize property in the possession or under the control of the defendant following entry of a final judgment or order requiring the delivery of property or the payment of money."). *See also* Utah R. Civ. P. 69A (defining methods to seize different types of property).

**23.** *See* Utah Code Ann. § 78B–5–502(5).

**24.** Utah R. Civ. P. 64E(b).

**25.** Utah R. Civ. P. 64E(d) ("If the court determines that the writ was wrongfully obtained, or that property is exempt from seizure, the court shall enter an order directing the officer to release the property.").

**26.** 11 U.S.C. § 544(a)(2) (emphasis added).

mines that the writ was wrongfully obtained, or that property is exempt from seizure, it will enter an order directing the officer to release the property.[27] A writ can also be returned unsatisfied if the property sought is no longer in the possession of the judgment debtor or if its value was insufficient to satisfy the full amount of the judgment.[28] If the execution is returned unsatisfied, the creditor has additional remedies available to it under Utah law.[29] Thus, Utah law recognizes and allows for the issuance of a writ of execution without a resulting levy.

This is an important distinction because the Utah life insurance exemption excepts payments made in a one year period prior to a creditor's "levy *or* execution"; it does not require both levy *and* execution.[30] Thus, the life insurance exemption exception could be triggered by a creditor delivering a writ of execution, even though that creditor was unable to levy for whatever reason. In this case, the Trustee has the rights and powers of a creditor with an execution returned unsatisfied. In other words, as of the petition date, the Trustee had the powers of a creditor that has delivered a writ of execution, regardless of whether the judgment was fully satisfied by levy. This status is sufficient to cause the one-year exception in the Utah exemption statute to come into play.[31] As such, Debtors were not entitled to exempt the payments they made on their life insurance policies in the year prior to the petition date.

The conclusion is not altered by the existence of another subsection of the Utah exemption statute that exempts certain types of retirement accounts, except for payments made "within one year before the debtor files for bankruptcy."[32] The bankruptcy court concluded that, if the Utah legislature had wanted to limit payments on life insurance policies in the year prior to bankruptcy, it would have used similar language. Whatever the Utah legislature's intent, this Court must consider the import of the statute's language on debtors who have filed bankruptcy. This means we must consider the overlay of the Code, and specifically § 544, on the Utah exemption statute. The Code grants a trustee certain powers as a creditor of a debtor, "whether or not such creditor exists."[33] Although § 544(a) is often described as giving "hypothetical powers,"

**27.** Utah R. Civ. P. 64E(d)(2).

**28.** *See* Utah R. Civ. P. 64(d)(3)(C) (providing that the officer shall return the writ to the court with proof of service within 10 days after service and, if property has been seized, include an inventory).

**29.** *E.g.,* Utah Code Ann. §§ 31A–22–201; 16–10a–1430(3)(a); 61–2f–506(5)(e).

**30.** Utah Code Ann. § 78B–5–505(1)(a)(xiii) (emphasis added).

**31.** Such an interpretation of § 544(a)(2) is not at odds with the legislative history cited by the bankruptcy court. *See Duffin II,* 441 B.R. 692, 698 (Bankr.D.Utah 2010) (citing H.R.Rep. No. 89–686 (1965); S.Rep. No. 89–1159 (1966), *reprinted in* 1966 U.S.C.C.A.N.

2032). That history indicates that Congress added the predecessor to § 544(a)(2) in order to ensure that a trustee was not "denied remedies which, under State law, are available only to creditors holding executions returned unsatisfied." S.Rep. No. 89–1159, at 11 (1966), *reprinted in* 1966 U.S.C.C.A.N. 2456, 2466. Thus, the grant of powers of a creditor holding an execution returned unsatisfied was an expansion, not a limitation, of a trustee's powers.

**32.** Utah Code Ann. § 78B–5–505(1)(b)(ii).

**33.** 11 U.S.C. § 544(a)(2). *See Pearson v. Salina Coffee House, Inc.,* 831 F.2d 1531, 1532–33 (10th Cir.1987) (federal law that grants a bankruptcy trustee strong-arm rights as a hypothetical creditor, and state law determines the actual rights and priorities of such creditor).

the rights and powers conferred on trustees are nevertheless real and coexistent with the rights given to such creditors by state law.[34] In this case, the Utah statute gives executing creditors the right and power to reach funds a debtor paid on life insurance policies in the year prior to execution, regardless of a successful levy. By virtue of § 544(a)(2), the Trustee also holds that right and power as of the petition date.

### C. Hypothetical "Rights and Powers" Under § 544(a)

▇▇▇▇▇ In addition to construing the Utah exemption statute narrowly, the bankruptcy court also overruled the Trustee's objection on the ground that § 544(a) is not a valid basis for objecting to exemptions, which are specifically authorized by another section of the Code. As noted by the bankruptcy court, § 544(a) is most typically understood to give a trustee "avoidance powers." Indeed, the vast majority of cases construing a trustee's hypothetical powers involve the avoidance of liens, security interests and other transfers of property. Claiming exemptions, on the other hand, does not constitute a transfer of property.[35] Moreover, state law exemptions are not typically dependent on the existence of a creditor's execution or judicial lien, so a trustee's hypothetical status under § 544(a) does not usually impact a debtor's claim of exemption. It is therefore not surprising that cases discussing the interaction of a trustee's hypothetical creditor status and a claim of exemption are somewhat rare.

One situation in which § 544(a) and exemptions do overlap is in cases considering a debtor's claimed exemption for property held as tenants by the entirety. Section 522(b)(3)(B) of the Code provides that certain debtors may exempt any interest in property that they hold as tenants by the entirety or joint tenants to the extent that such interest is exempt from process under applicable non-bankruptcy law. A number of states provide that interests held by a husband and wife as tenants by the entirety are immune from the reach of creditors who have a claim only against one of the spouses. Of course, there is typically no tenants by the entirety exemption from claims as to which both spouses share liability. Applicability of the exemption then turns on the existence (or lack of) joint creditors.

Where joint husband and wife debtors claim a tenants by the entirety exemption in bankruptcy, the trustee will sometimes object based on his hypothetical status under § 544(a) as a joint creditor of both debtors. The cases are split on whether § 544(a) can be used in this manner. Some cases interpret § 544(a) powers as limited to avoidance of transfers.[36] As one court concluded, "§ 544 may not be used as a mechanism to attack a claim of exemption because entitlement to an exemption arises by statute and there is no identifiable transfer of a property interest or obligation undertaken in its creation that may be avoided pursuant to § 544."[37] That same court also emphasized that a trustee's standing to object to exemptions derives from his or her power to represent

**34.** *Pearson*, 831 F.2d at 1532–33; *Hamilton v. Washington Mut. Bank Fa (In re Colon)*, 563 F.3d 1171, 1174 (10th Cir.2009) ("The status and rights of the hypothetical lien creditor and BFP are determined by state law.").

**35.** *See In re Howe*, 232 B.R. 534, 537 (1st Cir. BAP), *aff'd*, 193 F.3d 60 (1st Cir.1999) ("[T]he exemption of property under § 522(b) does

not constitute a 'transfer' for the purposes of § 544(a).").

**36.** *See In re Eichhorn*, 338 B.R. 793, 797–98 (Bankr.S.D.Ill.2006); *Thomas v. Peyton*, 274 B.R. 450, 455–56 (E.D.Va.2001), *aff'd*, 312 F.3d 145 (4th Cir.2002.)

**37.** *In re Eichhorn*, 338 B.R. at 798.

*actual* creditors. Since § 544(a) depends on the trustee assuming the role of a *hypothetical* creditor, the court concluded § 544 could not be used for the purpose of objecting to an exemption.[38]

Other cases allow a trustee to utilize his hypothetical status under § 544 to object to a tenants by the entirety exemption, many with little or no discussion.[39] The few that do address the issue, focus on the language of § 544(a), which states that a trustee shall have "the rights and powers of, *or* may avoid any transfer of property of the debtor...."[40] This language gives a trustee *both* the hypothetical status necessary to avoid transfers, *as well as* giving a more general grant of "rights and powers." Since "rights and powers" extend beyond the ability to avoid unperfected transfers, some courts conclude that "[t]here is no reason that the trustee should be unable to assert these same hypothetical rights and powers against the Debtor's claim to an exemption."[41]

Although it is a close call, this Court ultimately adopts the reasoning of the second line of cases. We agree that the powers given to a trustee under § 544(a) are not limited to avoidance of transfers but specifically include broader "rights and powers."[42] For example, courts have held that § 544(a) powers give a trustee the ability to invoke the doctrine of marshaling,[43] and to toll statutes of limitation.[44] Some courts have held that § 544(a) gives a trustee the power to bring damages claims against third parties on behalf of creditors.[45] In that context, the Tenth Circuit has rejected a narrow interpretation of § 544(a).

To understand the full import of § 544 one must first understand the power of a bankruptcy trustee to stand in the shoes of an [sic] hypothetical creditor of the debtor to effect a recovery from a third party. Simply stated, from the reservoir of equitable powers granted to the trustee to maximize the bankruptcy estate, Congress has fashioned a legal fiction. Not only is a trustee empowered to stand in the shoes of a debtor to set aside transfers to third parties, but the fiction permits the trustee also to assume the guise of a creditor with a judgment against the debtor. Under that guise, the trustee may invoke whatever remedies provided by state law to judgment lien creditors to satisfy judgments against the debtor.[46]

---

**38.** *Id.* at 799.

**39.** E.g., *In re Blum,* 39 B.R. 897, 899 (Bankr. D.Fla.1984); *In re Digaudio,* 127 B.R. 713, 714 (Bankr.D.Mass.1991); *Sumy v. Schlossberg,* 777 F.2d 921, 928 n. 14 (4th Cir.1985).

**40.** 11 U.S.C. § 544(a) (emphasis added).

**41.** *In re Digaudio,* 127 B.R. at 714.

**42.** *Hill v. Gibson Dunn & Crutcher, LLP (In re MS55, Inc.),* No. 06–cv–01233, 2007 WL 2669150, at *11 (D.Colo. Sept. 6, 2007) ("[T]he language of section 544(a) supports a finding that trustees are endowed with more than solely avoidance powers.").

**43.** *In re Tampa Chain Co., Inc.,* 53 B.R. 772, 777–78 (Bankr.S.D.N.Y.1985) (holding that § 544(a)(2) gave trustee right to invoke doctrine of marshaling); *Houghton v. United States (In re Szwyd),* 394 B.R. 230, 239–40 (Bankr.D.Mass.2008), *aff'd,* 408 B.R. 547 (D.Mass.2009) (citing cases).

**44.** *Collins v. Kohlberg & Co. (In re Sw. Supermarkets, LLC),* 325 B.R. 417, 426–27 (Bankr. D.Ariz.2005).

**45.** *In re MS55, Inc.,* 2007 WL 2669150, at *11–12; *Zilkha Energy Co. v. Leighton,* 920 F.2d 1520, 1523 (10th Cir.1990).

**46.** *Zilkha Energy Co.,* 920 F.2d at 1523 (discussing the scope of a trustee's hypothetical powers as a judicial lien creditor under § 544(a)(1)).

Under § 544(a)(2), the Trustee assumed the guise of a creditor with an execution returned unsatisfied against the Debtors. Under that guise, the Trustee may invoke "whatever remedies provided by state law" to a creditor holding an execution returned unsatisfied. Under Utah law, those rights include access to any payments the Debtors made on their life insurance policies in the year prior to execution (*i.e.* the petition date). In so doing, a trustee maximizes the bankruptcy estate for the benefit of all creditors.

Although the bankruptcy court concluded the exercise of § 544(a) powers to be at odds with the spirit of § 522(b), we see no such conflict. Section 522(b) provides that state law may determine exemptions in bankruptcy cases. Utah law provides an exemption for life insurance contracts, but specifically excepts payments made in the year prior to levy or execution. Presumably, this is to prevent a debtor from front-loading assets into a life insurance policy to avoid the reach of creditors. The exemption and exception function essentially the same way to prohibit abusive bankruptcy planning, except that the trustee, rather than an individual creditor, gains access to the excepted funds. A trustee must act on behalf of creditors, because once the bankruptcy filing has occurred, judgment lien creditors are barred from reaching specific assets of the estate. Through the use of a trustee's hypothetical powers, all creditors may then benefit from the non-exempt funds.

To hold otherwise would permit a Utah debtor to keep more of his life insurance assets if he filed bankruptcy, than if he tries to work through his financial problems and stay out of bankruptcy. Why would the Utah legislature want to effectively encourage bankruptcy filings by granting a more expansive exemption to a debtor in bankruptcy, while refusing that same exemption to a debtor who stays out of bankruptcy? Allowing a debtor to avoid his creditors by shielding assets in bankruptcy, when he could not do so outside of bankruptcy, makes no policy sense. We decline to read the Utah statute to achieve such a result.

## V. Conclusion

For the reasons stated herein, the bankruptcy court's orders overruling the Trustee's exemption objection are RE-VERSED.