In re Scott McGOUGH and Lisa McGough, Debtors.

David V. Wadsworth, Trustee, Plaintiff–Appellant,

v.

The Word of Life Christian Center, Defendant–Appellee.

BAP No. CO–11–038.
Bankruptcy No. 09–37932.
Adversary No. 10–01910.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

March 14, 2012.

David V. Wadsworth of Sender & Wasserman, P.C., Denver, CO, pro se.

Scott T. Rodgers (Lee Katherine Goldstein with him on the brief) of Fairfield and Woods, P.C., Denver, CO, for Defendant–Appellee.

Before MICHAEL, THURMAN, and KARLIN, Bankruptcy Judges.

THURMAN, Bankruptcy Judge.

Can there ever be too much charity? In the bankruptcy context, Congress generally responds, "when the charity exceeds 15% of a debtor's gross annual income." How that response is to be interpreted is the subject of the present appeal. Here, the Bankruptcy Court concluded, pursuant to 11 U.S.C. § 548(a)(2)(A),[1] that the trustee in bankruptcy ("Trustee") was entitled to avoid a portion of the charitable contributions made by debtors Lisa and Scott McGough ("Debtors") during the two-year period prior to their bankruptcy filing, which was only the amount by which those contributions exceeded 15% of their gross annual income. On appeal, the Trustee argues that § 548(a)(2)(A) mandates that the Debtors' contributions, which exceeded the 15% threshold in both preceding years, be avoided in their entirety. For the reasons set forth herein, we affirm the Bankruptcy Court's decision.

---

**1.** Unless otherwise noted, all further statutory references in this decision will be to the Bankruptcy Code, which is Title 11 of the United States Code.

## I. BACKGROUND

The Debtors filed for Chapter 7 relief on December 31, 2009. On November 18, 2010, the Trustee initiated an adversary proceeding by filing a complaint against the Word of Life Christian Center ("Church") seeking to avoid and recover all of the charitable contributions it had received from the Debtors during 2008 and 2009, which totaled $4,758. In its answer to the complaint, the Church admitted its receipt of donations in the specified amounts, but argued that they were excepted from avoidance as charitable contributions within the "safe harbor" provided by § 548(a)(2).[2]

Both parties filed motions for summary judgment, and each responded to the other's motion.[3] The Trustee argued that, because the contributions exceeded 15% of the Debtors' gross annual income in each year, the total amount of the contributions made to the Church should be avoided and recovered for the estate. The Church responded that none of the contributions could be avoided because no individual contribution exceeded 15% of the Debtors' gross annual income for the relevant year. Alternatively, the Church argued that, if individual contributions are required to be aggregated on an annual basis, then only that portion of the total contributions that

exceeded 15% of the Debtors' gross annual income was avoidable.

Based on the pleadings, the Bankruptcy Court concluded, for purposes of § 548(a)(2)(A), that: 1) social security benefits are not included in the determination of the Debtors' "gross annual income;" 2) charitable donations are aggregated annually in determining whether they exceed 15% of annual income; and 3) only that portion of the aggregated transfers that exceeds the 15% threshold may be avoided. Applying these principles, the Bankruptcy Court partially granted the Trustee's motion, avoiding only the amount of the Debtors' annual charitable contributions that exceeded 15% of their gross annual income, for a total avoidance of $2,614.95.[4] The Trustee timely appealed, and the Church did not cross-appeal.

## II. APPELLATE JURISDICTION

■ This Court has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[5] In this case, the Trustee asserted four causes of action in his adversary complaint, all of which allege fraudulent conveyance and seek recovery of donations made to the Church by the Debtors. The Trustee's first claim is

**2.** This provision was first labeled a "safe harbor" in the House Report that accompanied it prior to its enactment, and § 548(a)(2) is now widely known by this moniker. *See* H.R.Rep. No. 105–556, 1998 WL 285820, at *4–5 (1998).

**3.** In its response to the Trustee's motion for summary judgment, the Church disputed that the Debtors were insolvent at the time the charitable contributions were made, which the Trustee has the burden of proving in order to avoid the transfers as constructively fraudulent under § 548. The Bankruptcy Court's memorandum opinion does not make any findings regarding the Debtors' insolvency at

the time the contributions were made, but the Church did not raise this issue on appeal and we therefore deem the issue waived.

**4.** Memorandum Opinion and Order on Plaintiff's Motion for Partial Summary Judgment and Defendant's Motion for Partial Summary Judgment, *in* App. at 114, published at *Wadsworth v. Word of Life Christian Ctr. (In re McGough)*, 456 B.R. 682, 687 (Bankr.D.Colo. 2011) ("Appealed Decision").

**5.** 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002; 10th Cir. BAP L.R. 8001–1 (2002).

made pursuant to § 548(a)(1)(B) for constructive fraud; the second is pursuant to § 548(a)(1)(A) for actual fraud; and the third and fourth claims are made pursuant to Colorado state law.[6] The Church filed its motion for partial summary judgment pursuant to the "safe harbor" provision of § 548(a)(2), which is specifically a defense only to a § 548(a)(1)(B) constructive fraud claim. The Trustee countered with his own motion for partial summary judgment on both his federal and state constructive fraud claims.[7] Neither party addressed the Trustee's second or fourth claims in their motions, and the only issue considered by the Bankruptcy Court was how to interpret the safe harbor clause, which specifically only applies to a § 548(a)(1)(B) claim.

The Bankruptcy Court's decision awarded judgment to the Trustee solely on the basis of constructive fraud, left pending the Trustee's actual fraud claims, and was therefore not a final order that could be appealed.[8] However, pursuant to this Court's directive to the parties to address the issue of appellate jurisdiction at oral argument, the parties stipulated to dismissal of the Trustee's second, third, and fourth causes of action, and an order dismissing those claims was entered by the Bankruptcy Court on February 9, 2012. By this action, the adversary proceeding was fully resolved, and the issue of appellate jurisdiction was "cured." Since neither party elected to have this appeal heard by the United States District Court for the District of Colorado, they have consented to appellate review by this Court, and this Court has jurisdiction to consider this appeal.

## III. ISSUE AND STANDARD OF REVIEW

 The issue in this appeal is whether § 548(a)(2)(A) protects charitable donations up to 15% of a debtor's gross annual income, even when the total of the donations exceeds that threshold, or whether exceeding the threshold removes the entire donation from protection.[9] The facts of this case are undisputed, and the Trustee contests only the Bankruptcy Court's

---

6. The Trustee's third claim, under Colo.Rev. Stat. § 38–8–106 (2007), mimics his first federal claim of constructive fraud, while his fourth claim, under Colo.Rev.Stat. § 38–8–105 (2007), mimics the second federal claim of actual fraud.

7. The Trustee's third cause of action, asserting a state law claim of constructive fraud, succeeds or fails along with his § 548(a)(1)(B) claim.

8. A final order "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *In re Durability, Inc.*, 893 F.2d 264, 265 (10th Cir.1990). In this case, the Bankruptcy Court apparently considered its decision to be a final resolution of the adversary proceeding, as it struck the previously set trial date in this matter upon the issuance of its decision. However, this Court has a duty to determine the existence of appellate jurisdiction for itself. *Id.*

9. The Church did not cross-appeal the Bankruptcy Court's decision. This Court therefore does not address the following § 548(a)(2)(A) issues: 1) whether social security benefits are included in calculation of a debtor's "gross annual income"; and 2) whether charitable transfers are aggregated on an annual basis in determining whether they exceed the 15% threshold. Likewise, we do not consider whether contributions to different charitable organizations are aggregated, as this was not an issue below, and we do not consider whether § 548(a)(2)(B), which insulates all contributions if consistent with past practices of a debtor, prevents avoidance of Debtors' transfers, as that issue does not appear to have been considered by the Bankruptcy Court and has been waived by the Church on appeal. Thus, in connection with this decision, we accept as underlying facts that the Debtors made donations to a qualified charitable organization that exceeded 15% of their gross annual income in both 2008 and 2009.

interpretation of § 548(a)(2)(A). Statutory interpretation is a legal issue that is reviewed by this Court *de novo*.[10] *De novo* review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision.[11]

## IV. DISCUSSION

Section 548 of the Bankruptcy Code allows bankruptcy trustees to avoid and recover certain transfers made by debtors prior to the filing of their bankruptcy petition on the ground that the transfers were either actually or constructively fraudulent.[12] Thus, a trustee may recover, from the transferee, any transfer made by the debtor within two years of filing of the bankruptcy petition, if the debtor either: 1) actually intended to defraud creditors in making the transfer ("actual" fraud); or 2) received less than "a reasonably equivalent value" in exchange, and was insolvent when the transfer was made ("constructive" fraud).[13] There are no exceptions to

avoidance of a transfer that a trustee establishes was made with actual fraudulent intent. However, a debtor's constructively fraudulent charitable donation cannot be avoided by the trustee if the transferee establishes that: 1) it is a qualified religious or charitable entity; and 2) the amount of the donation is not more than 15 percent of the debtor's gross annual income in the year of the transfer.[14]

In the two-year "reachback" period, the Debtors' non-social security gross annual income was $6,800 in 2008, and $7,487 in 2009. The Debtors made several charitable donations to the Church in that period, the totals of which were $3,478 in 2008, and $1,280 in 2009.[15] Thus, without the social security income, 15% of the Debtors' gross annual income is $1,020 for 2008, and $1,123.05 for 2009, and the Debtors' total contributions to the Church exceeded these threshold amounts by $2,458 in 2008, and by $156.95 in 2009.[16]

---

**10.** *In re Annis,* 232 F.3d 749, 751 (10th Cir. 2000); *In re Duffin,* 457 B.R. 820, 822 (10th Cir. BAP 2011).

**11.** *Salve Regina Coll. v. Russell,* 499 U.S. 225, 238, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

**12.** Specifically, § 548(a)(1) provides:
The trustee may avoid any transfer ... of an interest of the debtor in property, or any obligation ... incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was ... indebted; or
(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer[.]
§ 548(a)(1)(A) and (B).

**13.** *Id.*

**14.** § 548(a)(2)(A) (the "safe harbor" provision). Another exception protects charitable contributions, even when they do exceed 15% of the debtor's gross annual income, if they are "consistent with the practices of the debtor in making charitable contributions." § 548(a)(2)(B). Although the Church raised the Debtors' past donation practice as a defense to avoidance in the Bankruptcy Court, no evidence was presented, and counsel for the Church specifically waived that defense at oral argument before this Court. We therefore do not address it.

**15.** These facts were set out in the Trustee's motion for summary judgment, and were stipulated to by the Church in its response. *See* App. at 41 and 85.

**16.** As previously noted, the parties stipulated to the accuracy of these facts, and the Church did not appeal the Bankruptcy Court's rulings that social security income is not part of "gross annual income," or that donations are aggregated for the year.

This Court now considers whether the Bankruptcy Court correctly concluded that § 548 allowed the Trustee to avoid only that portion of the Debtors' charitable contributions that exceeded the 15% threshold. The Trustee asserts that § 548(a)(2)(A) is clear and unambiguous on its face, and its plain reading "provides a safe harbor only if the contributions do not exceed a minimum threshold, but provides no safe harbor if the threshold is exceeded."[17] The safe harbor provision, enacted as part of the Religious Liberty and Charitable Donation Protection Act of 1998 ("Donation Protection Act"),[18] provides as follows:

> (2) A transfer of a charitable contribution to a qualified religious or charitable entity or organization shall not be considered to be a transfer covered under paragraph (1)(B) in any case in which[—]
>
> > (A) the amount of that contribution does not exceed 15 percent of the gross annual income of the debtor for the year in which the transfer of the contribution is made[.][19]

The legislative history behind this provision elaborates on it, as follows:

> The 15 percent safe harbor is necessary to protect the tithing practices of certain religious faiths. It is intended to apply to transfers that a debtor makes on an *aggregate* basis during the [two]-year reachback period preceding the filing of the debtor's bankruptcy case. Thus, *the safe harbor protects annual aggregate contributions up to 15 percent of the debtor's gross annual income.*[20]

The Trustee maintains that the legislative history of this provision should not be considered by this Court because the statute itself is plain and unambiguous.[21] The Church counters that the Trustee's own interpretation of the statute is also not a literal reading since the statute does not state that the *entire* amount of the contributions may be avoided if the 15% threshold is exceeded.[22]

The Trustee cites *In re Zohdi*[23] in support of his assertion that § 548(a)(2)(A) is clear and unambiguous on its face. In *Zohdi*, a bankruptcy court addressed the safe harbor provision in the context of a debtor's single contribution of $10,000 to Louisiana State University during a year in which his gross annual income was $43,669. The *Zohdi* court concluded that the trustee could avoid the entire $10,000 transfer, as opposed to $3,450, which was the amount by which the donation exceeded 15% of the debtor's gross annual income.

---

17. Appellant's Brief at 6.

18. Pub.L. No. 105–183, 112 Stat. 517.

19. § 548(a)(2)(A).

20. H.R.Rep. No. 105–556, 1998 WL 285820, at *9 (1998) (emphasis added) (footnote omitted).

21. *See Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (when statute is ?lain, court's sole function is to enforce its terms); *In re Geneva Steel Co.*, 281 F.3d 1173, 1178 (10th Cir.2002) ("statute clear and unambiguous on its face must be interpreted according to its plain meaning").

22. We note also that the statute does not expressly state that contributions are aggregated. In fact, it specifically references a singular "transfer of a charitable contribution." However, the singularity of the language used in § 548(a)(2) was addressed by the Second Circuit in *Universal Church v. Geltzer*, 463 F.3d 218, 223–24 (2d Cir.2006), concluding that § 102(7) ("In this title—the singular includes the plural") both keeps the individual/aggregate issue alive and renders § 548(a)(2) ambiguous.

23. *Murray v. La. State Univ. Found. (In re Zohdi)*, 234 B.R. 371 (Bankr.M.D.La.1999).

The Bankruptcy Court in the present case acknowledged that *Zohdi* concluded that a plain reading of § 548(a)(2)(A) requires the entire amount of a charitable donation to be avoided, noting that *Zohdi* "reasoned that Congress would have included more precise language if it had intended for just the amount over the 15% to be voidable."[24] The *Zohdi* decision appears to be the only published opinion that has directly addressed the specific issue before us now, but we agree with the Bankruptcy Court that *Zohdi* is factually distinguishable from this case because it involved a single large donation. We likewise view *Zohdi's* statement, in *dicta*, that § 548(a)(2) does not require aggregation not particularly persuasive. Finally, and most importantly, *Zohdi* is not binding precedent in this jurisdiction.

 We conclude that the language of § 548(a)(2)(A) is susceptible to different interpretations and, as such, is ambiguous. Therefore, we may look beyond the statutory language itself in order to interpret it in accordance with Congressional intent. In that respect, we need not look far. We consider the statement in the House Report that accompanied this statute's revision in 1998 that "the safe harbor protects annual aggregate contributions up to 15 percent of the debtor's annual income" to be particularly instructive. We read the statute's provision of protection "up to" a threshold amount to mean that is the most that will be given. We do not read that to mean that, once the threshold is crossed, all protection disappears. As the Bankruptcy Court noted, it is "doubtful that Congress would protect a debtor's right to donate 15% of their [gross annual income] to a charitable organization, but allow a

trustee to avoid all donations if one cent over the 15% threshold is donated."[25] Interpreting the statute to provide up to, but no more than, 15% is both more logical and more likely to effectuate Congress' actual intent than is the Trustee's interpretation.

In addition, our interpretation of § 548(a)(2) is more compatible with § 1325(b)(2)(A), another provision added to the Bankruptcy Code by the Donation Protection Act, than is the Trustee's. Thus, in Chapter 13 cases, when determining a debtor's disposable income for the purpose of its Chapter 13 plan payments, § 1325(b)(2)(A)(ii) states:

> For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor ... less amounts reasonably necessary to be expended ... for charitable contributions ... in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made[.][26]

Thus, when computing their disposable income, Chapter 13 debtors may deduct their charitable donations "in an amount not to exceed" 15% of their gross income. This provision plainly reduces disposable income in Chapter 13 cases by an amount *up to* 15% of gross income. As such, Chapter 13 debtors' post-filing charitable contributions are deductible up to the threshold amount and are considered to be beyond the bankruptcy court's scrutiny.[27] Similarly interpreting § 548(a)(2) to allow a charitable organization to retain contributions *up to* 15% of the debtor's gross annual income harmonizes these two provisions by protecting both pre- and postpeti-

---

**24.** Appealed Decision at 686.

**25.** *Id.*

**26.** § 1325(b)(2)(A)(ii).

**27.** *In re Gamble*, No. 11–80131, 2011 WL 2971406, at *2 (Bankr.M.D.N.C. June 15, 2011).

tion charitable donations up to a maximum of 15% of an individual debtor's gross annual income.[28] On the other hand, the Trustee's interpretation would result in different treatment of pre- and post-filing charitable contributions.

## V. CONCLUSION

The Bankruptcy Court's order, which permits the Trustee to avoid only the amount of "reachback" period charitable contributions that exceeded 15% of the Debtors' gross annual income, is AFFIRMED.

---

**28.** *See In re Turner,* 84 F.3d 1294, 1298 (10th Cir.1996) (statutes should be construed to harmonize their provisions); *U.S. W. Commc'ns, Inc. v. Hamilton,* 224 F.3d 1049, 1053 (9th Cir.2000) (duty to harmonize statutes enacted together as part of same Act is "particularly acute").