In re Gary Lee BRYAN, also known as Gary Bryan; also known as Gary L. Bryan; officer, director, shareholder of Fort Love Aviation Services, Inc.; officer, director, shareholder of Second Story Ventures, Inc.; officer, director, shareholder of Disconnect, Inc.; officer, director, shareholder of G.L. Bryan Investments, Inc.; officer, director, shareholder of Tepgarde, LLC; officer, director, shareholder of Check Processing Resources, Inc.; officer, director, shareholder of Reflex Systems, LLC; officer, director, shareholder of Home Closings, LLC; officer, director, shareholder of Goodrich Bryan Investments, Inc.; officer, director, shareholder of Ft. Collins Tire & Auto Services, Inc.; officer, director, shareholder of Unicomm Power Sources, LLC, Debtor.

Gary Lee Bryan, Appellant,

v.

Arthur Clark and AET Environmental, Appellees.

BAP No. CO–08–013.
Bankr.No. 05–38302–SBB.

United States Bankruptcy
Appellate Panel
of the Tenth Circuit.

June 15, 2009.

John G. Nelson, Denver, CO, for Appellant.

David von Gunten, Englewood, CO, for Appellees.

Before NUGENT, THURMAN, and KARLIN, Bankruptcy Judges.

## OPINION

THURMAN, Bankruptcy Judge.

This appeal is from the bankruptcy court's denial of the debtor's objection to the appellees' claim. We affirm.[1]

## I. BACKGROUND

Creditors/Appellees, AET Environmental and Arthur Clark (jointly, "AET") have two judgment liens relevant to this bankruptcy. Both judgments arose out of a state court lawsuit filed against the debtor, Gary Bryan ("Debtor"), and his wholly-owned corporation, G.L. Bryan Investments (the "Corporation"). One of the judgments, in the amount of $211,000, was entered against both the Debtor and the Corporation, jointly and severally (the "Joint Judgment"). The other, in the amount of $380,000, was entered against the Corporation only (the "Corporate Judgment"). Both judgments were issued on the same day.

AET recorded a transcript of the Joint Judgment with the Arapahoe County recorder's office on July 15, 2004. AET did not record the Corporate Judgment because, at that time, the Corporation had a pending bankruptcy, while Gary Bryan did not. Thus, AET purportedly requested that the Joint Judgment be recorded only as to Gary Bryan, and not as to the Corpo-

---

1. On July 21, 2008, appellees filed a motion to strike the appellant's reply brief in this matter as untimely and not properly served. On August 20, 2008, that motion was referred to this panel for disposition. At oral argument, appellees' counsel admitted that appellees had not been prejudiced by appellant's failures to comply with the rules. We therefore deny the motion.

ration. Nonetheless, the Joint Judgment did appear as a lien on the Corporation's real property, in violation of the then-existing automatic stay. On October 3, 2005, the Debtor filed his own petition for Chapter 13 relief. At some point, AET learned that the Joint Judgment filing had resulted in a lien on the Corporation's property and had therefore violated the automatic stay in the Corporation's bankruptcy. In order to rectify that violation, AET filed a release of the Joint Judgment lien, as to the Corporation only, in March 2006. In April 2006, the Corporation's bankruptcy was dismissed and, on May 4, 2006, AET recorded transcripts of both judgments.[2]

The Corporation's principal asset was a 57% interest in an office building in Centennial, Colorado (the "Property").[3] The remaining 43% interest in the Property was held by Tepco, Inc. ("Tepco"), a corporation owned by Jerry Tepper. Both the Corporation's and Tepco's interests in the Property were subject to a first deed of trust, purportedly held by a company controlled by Jerry Tepper, 6886, LLC ("6886"). In August 2006, foreclosure proceedings were initiated on the Property by 6886, which subsequently purchased the Property at the foreclosure sale in November 2006, and executed a twenty-year lease of it to Yosemite Leaseco, LLC ("Leaseco") in December 2006.

In January 2007, AET filed suit in state court against Tepco, Jerry Tepper, 6886, Leaseco, Gary Bryan, the Corporation, and others, alleging that their transactions with respect to the Property constituted a fraudulent attempt to deprive AET of its junior lien rights. Shortly thereafter, AET and some of the defendants executed a settlement agreement whereby, among other things: 1) AET dismissed its lawsuit and released its lien on the Property; 2) 6886 and Leaseco terminated the Property lease; and 3) Jerry Tepper and 6886 executed a $250,000 promissory note to AET, payable by the earlier of one year from its execution or upon sale of the Property. In the Settlement Agreement, to which neither the Debtor nor the Corporation was a party, AET specifically reserved its claims against both of those parties, as well as the "sole, subjective discretion" to apply any proceeds received under the agreement to the judgments against them. The Property was sold in August 2007, and AET was paid approximately $260,000 on the promissory note. Before AET had applied the proceeds to either debt, Debtor filed an objection to AET's claim against him, contending that AET was required to apply the proceeds received from the settlement towards satisfaction of the Joint Judgment, rather than the Corporate Judgment. The bankruptcy court denied that objection and this appeal ensued.

## II. APPELLATE JURISDICTION

This Court has jurisdiction to hear timely-filed appeals from final judgments of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to

---

2. At the time of this recording, the Debtor's own bankruptcy was pending. However, since the recording of the Joint Judgment had remained in effect as to Debtor since it was first recorded in 2004, its refiling may not have violated the automatic stay in Debtor's bankruptcy. Moreover, since the Debtor was not a party to the Corporate Judgment, the recording of that judgment also may not have violated the stay in Debtor's bankruptcy.

However, this Court does not need to decide whether or not the 2006 recordings violated the automatic stay in the Debtor's bankruptcy, because that is not an issue that is before us in this appeal.

3. Although the Debtor owned 100% of the Corporation, he held no individual interest in the Property.

have the district court hear the appeal.[4] An order disposing of an objection to a creditor's claim is a final order for the purposes of appeal.[5] The judgment from which this appeal is taken was entered on January 9, 2008, and Debtor's notice of appeal was timely filed on January 18, 2008. Neither party has elected to have this matter heard by the United States District Court. Therefore, this Court has appellate jurisdiction over this case.

## III. ISSUES AND STANDARD OF REVIEW

■ The principal issue on appeal is whether AET is required to apply the proceeds it received in settlement towards satisfaction of one of its two judgment liens over the other. Resolution of this issue involves interpretation of Colorado lien law. This Court reviews legal interpretations *de novo*, and does not defer to the bankruptcy court's interpretation of state law.[6]

## IV. DISCUSSION

■ Debtor contends that Colorado law compels AET to apply the settlement proceeds to the Joint Judgment because neither party "designated" the debt to which the proceeds were to be applied, and the Joint Judgment was recorded first. Relying primarily upon *Weston Group, Inc. v. A.B. Hirschfeld Press, Inc.* ("*Weston*"),[7] Debtor asserts that payments are to be applied to debts as designated by the debt-

or or, if the debtor does not designate, then as desired by the creditor. In the event that neither party timely designates to which debt it applies, "the payment is applied by law in order of time to the earliest matured debts."[8] The Debtor contends that the earliest "matured" debt in this case is the Joint Judgment, based on the date of its filing with the county recorder.[9]

In *Weston*, two debts were owed to a commercial printer for two printing jobs ordered by the same customer. One of the jobs related solely to the customer's business, while the other related to a previously formed joint venture with a third-party. The printer calculated the charges for both accounts and sent the customer a payment schedule that required three payments in a particular month, totaling $46,800. The customer obtained an advance from its joint-venturer in the same amount, and paid the printer a total of $45,450, without designating how the payments were to be applied. The printer, which was unaware of any joint-venture, used the funds to pay off the earlier of the customer's two jobs, thereby leaving a balance of nearly $50,000 due on the joint-venture job. The customer's joint venture failed, and the customer did not pay off the remainder of what was owed to the printer. The printer ultimately sued both its customer and the third-party joint venturer for the balance due, but the state court

---

4. 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002.

5. *In re Miller*, 284 B.R. 734, 736 (10th Cir. BAP2002).

6. *Kelaidis v. Cmty. First Nat'l Bank (In re Kelaidis)*, 276 B.R. 266, 270 n. 1 (10th Cir. BAP 2002).

7. *Weston Group, Inc. v. A.B. Hirschfeld Press, Inc.*, 845 P.2d 1162 (Colo.1993) (en banc).

8. *Id.* at 1166.

9. Debtor asserts that the Joint Judgment was filed first because it was assigned a lower filing number in the May 2006 filings. However, assuming that the filing date of the two judgments is even relevant to our inquiry, the Joint Judgment was initially filed in July 2004, and is therefore the earlier filed judgment as to the Debtor.

dismissed the claims against the customer when that party filed for bankruptcy.

■ The Colorado Supreme Court, *en banc*, held that the printer was entitled to apply the customer's payments as it did, stating:

> It is well established that, generally, a debtor owing more than one debt to a creditor has the right to designate the debt to which a payment shall be applied. If the debtor does not direct how the payment is to be applied, then the creditor generally may apply the payment in any way that the creditor desires. An exception to this latter rule is that if the creditor knows or should know that the payment should be applied in a particular way to protect the interest of a third person, then the creditor must apply the payment in accordance with that interest. If neither the debtor nor the creditor exercises its right to direct application of a payment, then the payment is applied by law in order of time to the earliest matured debts.[10]

Since the customer had not designated how the payments were to be applied, the court held that the printer had a right to apply the payments as it did.[11] Thus, *Weston* holds, pursuant to Colorado law, that a "payment" that is not directed to a particular debt by either party "is applied by law in order of time to the earliest matured debts."

■ Debtor's reliance on *Weston* is misplaced, most notably because the proceeds that AET received were not a "payment" by Debtor, but were the result of AET's settlement of its claims against third parties. Neither Debtor nor the Corporation was even a party to the settlement agreement. The *Weston* case dealt with a voluntary payment from a debtor to its creditor, in which the debtor's power to designate application of payments derived from its contractual rights regarding tender of performance.[12] A debtor who has neither ownership nor control of the funds obtained by the obligee does not tender them pursuant to the contract and, therefore, has no contractual right to designate how they are applied. Thus, under *Weston*, the debtor's control and ownership of tendered funds are significant factors that give rise to the debtor's "right" to designate. In addition, the *Weston* holding is limited to the situation in which the debtor owes more than one debt to the creditor. In the present case, only the Corporation owes more than one debt to AET, and Debtor is liable to AET on the Joint Judgment only. As such, the principles of *Weston* are not directly applicable to this Debtor.

A more closely analogous case is *Weinstein v. Park Funding Corp.* ("*Weinstein*"),[13] in which a creditor foreclosed a deed of trust that was security for four promissory notes. The notes were secured only by the real property, except that the debtor was personally liable for accrued but unpaid interest and for any liens that arose from its actions. The

---

**10.** *Id.* at 1165–66 (citations and footnotes omitted).

**11.** The court also held that a payee is not required to "manifest its intent" with respect to application of the payments in order for that application to be effective, thereby specifically rejecting that requirement contained in § 259(1) of the Restatement (Second) of Contracts. *Id.* at 1165.

**12.** "As a general rule, an obligor has the power to direct the obligee's application of a payment or other performance." Restatement (Second) of Contracts § 258 cmt. a.

**13.** *Weinstein v. Park Funding Corp.*, 879 P.2d 462 (Colo.App.1994).

creditor asserted that, pursuant to the principles of *Weston,* he was entitled to determine application of the foreclosure proceeds because the debtor had failed to do so. The court disagreed, finding *Weston* inapplicable because that case dealt with "voluntary payments," which the proceeds of a foreclosure sale are not. Thus, *Weinstein* holds that, unlike voluntary payments, foreclosure proceeds "must be applied by the court according to equitable principles," and it concluded that "equity requires courts to apply the proceeds from a foreclosure sale in a manner which provides the creditor the greatest opportunity to recover payment for the full debt." [14]

 In this case, AET held a judgment lien on the Corporation's interest in the Property, and filed a lawsuit to prevent third parties from compromising that lien. Debtor held no interest in the property, except indirectly, as the sole shareholder of the Corporation. AET's lawsuit was ultimately settled by and between the Property's lienholders and, pursuant to the settlement, AET released its lien on the Property. Thus, even if the settlement proceeds are considered to be a voluntary payment, the source of the payment was neither the Debtor nor the Corporation. As such, neither the Debtor nor the Corporation had the power to dictate AET's application of the settlement funds. The only restriction on AET's use of the settlement proceeds was that they be applied to the Corporation's liability to AET. Pursuant to Colorado law, the proceeds of a foreclosure are concluded to be involuntary payments and are applied by the courts

pursuant to principles of equity, which Colorado's courts have found dictate application in whatever manner maximizes the creditor's return.[15] We determine that leaving the Joint Judgment intact maximizes AET's potential return, both because there are two debtors liable for that debt, and because the Property was essentially the Corporation's only asset and therefore the only source for payment of the Corporate Judgment.

## V. CONCLUSION

The bankruptcy court properly denied the Debtor's objection to AET's claim, and this Court therefore AFFIRMS that order.

---

14. *Id.* at 465.

15. The Debtor argues that the equities favor application of the funds to the Joint Judgment because AET dismissed its lien on the Property for less than the amount owed pursuant to either judgment after having admitted that the Corporation's interest in the Property would be sufficient to satisfy both judgments.

However, the argument that AET took less for the release of its lien than it should have is without merit. There was absolutely no evidence to the effect that AET compromised its lien on the Property for any reason other than it was the best deal that it could make under the circumstances.