In re Connie Rae MURRAY, Debtor.

Darcy D. Williamson, Trustee, Appellant,

v.

Connie Rae Murray, Appellee,

and

Derek Schmidt, Kansas Attorney General, Intervenor–Appellee.

National Association of Consumer Bankruptcy Attorneys, Amicus Curiae.

In re Courtney Jane Beach, formerly known as Courtney Jane Keith, and John Edward Beach, Debtors.

Robert L. Baer, Chapter 7 Trustee, Appellant,

v.

Courtney Jane Beach, formerly known as Courtney Jane Keith, and John Edward Beach, Appellees.

BAP Nos. KS–13–034, KS–13–037. Bankruptcy Nos. 12–41579, 12–40906.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Filed March 4, 2014.

Shawn C. Jurgensen (Darcy D. Williamson, pro se, with him on the brief) of the Williamson Law Office, Topeka, KS, for Appellant Darcy D. Williamson, Trustee.

David P. Troup of Weary Davis, L.C., Junction City, Kansas (Jill A. Michaux of Neis & Michaux, P.A., Topeka, KS, with him on the brief), for Appellee Connie Rae Murray.

Derenda J. Mitchell, Assistant Attorney General, for Intervenor–Appellee Derek Schmidt, Kansas Attorney General.

John T. Houston of Cosgrove, Webb & Oman, Topeka, KS, for Appellant Robert L. Baer, Chapter 7 Trustee.

Bruce C. Barry of Bruce C. Barry, P.A., Manhattan, KS (Jill A. Michaux of Neis & Michaux, P.A., Topeka, KS, with him on the brief), for Appellees Courtney Jane Beach and John Edward Beach.

Before THURMAN, Chief Judge, CORNISH, and MOSIER[1], Bankruptcy Judges.

## OPINION

CORNISH, Bankruptcy Judge.

In these two substantively similar cases, the Chapter 7 trustees appeal the bankruptcy court's orders overruling their objections to exemptions claimed by the debtors. The debtors claimed as exempt their state and federal tax refunds attributable to the earned income tax credit under a Kansas bankruptcy-only exemption statute. The trustees objected, arguing primarily that their statutory strong-arm rights and powers defeated the debtors' exemptions. The bankruptcy court overruled the objections, concluding that the trustees' strong-arm rights and powers apply to property of the estate, but do not extend to specifically exempt property. Having reviewed the record and the applicable law, we AFFIRM the bankruptcy court's orders.

---

**1.** Honorable R. Kimball Mosier, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Utah, sitting by designation.

**2.** The facts underlying this appeal are undisputed, and unless otherwise indicated, the following description is taken from the bankruptcy court's *Memorandum Opinion and Order Overruling the Trustee's Objection to Exemption* ("*Memorandum Opinion*"), in the Beaches' Appendix ("Beach App.") at 86, and Murray's Appendix ("Murray App.") at 196.

## I. FACTS AND BANKRUPTCY COURT PROCEEDINGS[2]

### A. Murray Facts

Debtor Connie Rae Murray ("Murray") filed a voluntary Chapter 7 petition in October 2012, claiming as exempt on Schedule C her "2012 Federal and State Refunds" with a value of $4,400. Murray claimed the exemption pursuant to Kansas Statutes Annotated ("K.S.A.") § 60–2315, which was enacted in 2011 and permits an individual debtor in bankruptcy to exempt the federal and Kansas earned income tax credits ("EITC") for one tax year. Darcy D. Williamson ("Williamson"), the Chapter 7 trustee, timely objected to the exemption claimed by Murray. Williamson argued that: 1) the exemption can be defeated by the strong-arm powers granted her under 11 U.S.C. § 544(a)(2);[3] 2) the exemption violates the Uniformity and Supremacy Clauses of the United States Constitution because it benefits only bankruptcy debtors; and 3) the exemption impermissibly alters the way in which payments are made under § 507, the provision setting forth the priority order of a bankruptcy estate's expenses and claims.

Williamson's second and third arguments had previously been considered and rejected by the bankruptcy court in a written decision issued April 4, 2012, in another case.[4] To support her only new argument, i.e., that her § 544(a)(2) powers can

---

The *Memorandum Opinions* are also available at *In re Beach*, No. 12–40906, 2013 WL 1795598 (Bankr.D.Kan. Apr. 29, 2013), and *In re Murray*, No. 12–41579, 2013 WL 1795676 (Bankr.D.Kan. Apr. 29, 2013).

**3.** Unless otherwise indicated, all future statutory references in text are to the Bankruptcy Code, Title 11 of the United States Code.

**4.** *See* discussion of *In re Westby* 473 B.R. 392 (Bankr.D.Kan.2012) below.

defeat Murray's claimed exemption, Williamson relied primarily on *In re Duffin,* a 2011 decision of this Courts.[5]  Generally speaking, *Duffin* addressed the scope of a trustee's § 544(a)(2) powers in reference to a Utah exemption for life insurance policies that excluded from exemption the premium payments made by the debtor in the year preceding a creditor's execution or levy.[6]

The bankruptcy court placed Williamson's objection under advisement based on ripeness concerns because the exemption was "of a tax refund that was neither certain to occur nor certain in amount."[7] Murray subsequently received a Kansas EITC refund of $410, and at the time of the bankruptcy court's decision, anticipated a federal EITC refund of $2,276.  The National Association of Consumer Bankruptcy Attorneys filed an amicus curiae brief in support of Murray, and Kansas Attorney General Derek Schmidt filed a memorandum in opposition to Williamson's objection and in defense of the constitutionality of K.S.A. § 60–2315.[8]

## B.  Beach Facts

John and Courtney Beach (the "Beaches") filed a voluntary Chapter 7 petition in June 2013, claiming as exempt on Schedule C their "Earned Income Credit" for tax year 2012 with a current value of "Unknown" pursuant to K.S.A. § 60–2315. Robert L. Baer ("Baer"), the Chapter 7 trustee, timely objected to the exemption claimed by the Beaches.  Like Williamson, Baer argued that his § 544(a)(2) powers can defeat the exemption, relying on the *Duffin* decision to support his argument. However, Baer did not allege that the bankruptcy-only exemption is unconstitutional, or that it impermissibly reprioritizes payment of claims under § 507.

As with the Murray case, the bankruptcy court held Baer's objection under advisement due to concerns regarding ripeness.[9]  The Beaches subsequently received a federal EITC refund of $2,078, and a Kansas EITC refund of $375.  Because this case was similar to the Murray case, the bankruptcy court administratively joined the cases and designated Murray as the lead case.

## C.  Bankruptcy Court Rulings

On April 29, 2013, Judge Janice Miller Karlin issued a Memorandum Opinion in each case, overruling the objections by Williamson and Baer (collectively, the "Trustees"), and allowing Murray and the Beaches (collectively the "Debtors") to exempt their federal and Kansas EITC refunds.  As to Williamson's assertions that the Kansas bankruptcy-only EITC exemption is unconstitutional and impermissibly reprioritizes payment of claims under § 507, Judge Karlin first noted that it had previously held those arguments to be invalid in *In re Westby,* and further, that this Court upheld such decision on appeal by opinion issued February 4, 2013.[10]  Additionally, Judge Karlin pointed out that the same arguments had similarly been rejected by Judge Robert E. Nugent of the Kansas bankruptcy court in *In re Earned Income Tax Credit Exemption Constitutional Challenge Cases* ("*In re*

---

5.  *In re Duffin,* 457 B.R. 820 (10th Cir. BAP 2011).

6.  *Id.* at 821–22.

7.  *Memorandum Opinion* at 2, *in* Murray App. at 197.

8.  *Id.* at 3 n. 5, *in* Murray App. at 198.

9.  *Memorandum Opinion* at 2, *in* Beach App. at 87.

10.  473 B.R. 392 (Bankr.D.Kan.2012), *aff'd,* 486 B.R. 509 (10th Cir. BAP 2013).

*EITC Cases*")[11] that was the subject of an appeal pending before Judge Thomas Marten of the United States District Court for the District of Kansas at the time of her decision.[12]

With respect to the Trustees' argument that their § 544(a)(2) strong-arm powers can defeat the Debtors' exemptions, Judge Karlin distinguished this Court's *Duffin* decision on the basis that it involved non-exempt property and concluded that the Trustees' § 544(a)(2) rights do not extend to exempt property that is not available for distribution to creditors as property of the estate.[13] The Trustees timely filed notices appealing the bankruptcy court's orders to this Court. Also pending before this Court is Murray's Motion for Debtor's Attorney's Fees and Costs ("Motion for Fees").[14]

## II. APPELLATE JURISDICTION

This Court has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[15] Neither party elected to have this appeal heard by the United States District Court for the District of Kansas. The parties have therefore consented to appellate review by this Court.

A decision is considered final "if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"[16] An order disposing of an objection to a creditor's claim is a final order for the purposes of appeal.[17]

## III. STANDARD OF REVIEW

The basic facts of these cases are undisputed. On appeal, the Trustees assert the bankruptcy court erred in determining the Debtors' claimed exemptions for tax refunds attributable to the federal and Kansas EITCs cannot be defeated by their § 544(a)(2) strong-arm powers. The Trustees' assertion of error presents a legal issue for determination. Legal questions are reviewed *de novo*.[18] *De novo* review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision.[19] Additionally, Kansas law provides that exemption statutes are to be liberally construed in favor of those benefitted by them.[20]

## IV. ANALYSIS

### A. EITC and Kansas Exemption Background

#### 1. *Federal and Kansas EITCs*

First enacted in 1975, the original pur-

---

**11.** 477 B.R. 791 (Bankr.D.Kan.2012).

**12.** Judge Nugent's decision has now been affirmed by the District Court of Kansas in *In re Lea*, No. 11–11131, 2013 WL 4431267 (D.Kan. Aug. 16, 2013).

**13.** It should be noted that Judge Karlin is a member of the Bankruptcy Appellate Panel and participated in the *Duffin* appeal.

**14.** *Docket # 37*, filed November 15, 2013.

**15.** 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002; 10th Cir. BAP L.R. 8001–3.

**16.** *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712, 116 S.Ct. 1712, 135 L.Ed.2d 1

(1996) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)).

**17.** *In re Bryan*, 407 B.R. 410, 413 (10th Cir. BAP 2009).

**18.** *Pierce v. Underwood*, 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

**19.** *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

**20.** *Hodes v. Jenkins (In re Hodes)*, 308 B.R. 61, 65 (10th Cir. BAP 2004).

pose of the federal EITC[21] was to offset the burden on lower income earners of payroll deductions for social security and Medicare.[22] After numerous expansions, the EITC is regarded by many as the largest federal anti-poverty program in the United States.[23] Because it can be perceived as "work-based welfare," or an "income support program," the EITC ordinarily enjoys broad-based bipartisan support from politicians, scholars, and pundits alike.[24] The EITC can also be viewed as a cash transfer program in that it is a refundable credit—in other words, it can decrease tax liability below zero and cause a payment to the taxpayer.[25] The amount of a taxpayer's EITC is calculated pursuant to a rather complicated formula[26] and is based on a percentage of his or her earned income,[27] taking into account the number of qualifying children the taxpayer can claim.[28]

In the late 1980's and early 1990's, states began enacting their own versions of the EITC to complement the federal EITC. Most state EITCs are calculated as a percentage of a taxpayer's federal EITC.[29] Kansas enacted an EITC provision in 1998, and expanded it in 2002, 2007, and 2010.[30] The amount of the Kansas EITC was originally 10% of the federal EITC, but was increased to 18% for 2010 through 2012.[31]

### 2. Kansas Exemption of the EITC

The Bankruptcy Code provides default rules defining exempt property, but § 522(b)(2) permits states to opt out of these rules and substitute their own. Kansas has elected to do so and codifies its own exempt property rules.[32] In April 2011, the Kansas legislature passed "Senate Bill No. 12," an EITC exemption stat-

---

21. 26 U.S.C. § 32.

22. *Sorenson v. Sec'y of Treasury*, 475 U.S. 851, 864, 106 S.Ct. 1600, 89 L.Ed.2d 855 (1986); *In re Crowson*, 431 B.R. 484, 492 (10th Cir. BAP 2010).

23. *See* Sara S. Greene, *The Broken Safety Net: A Study of Earned Income Tax Credit Recipients and a Proposal for Repair*, 88 N.Y.U. L.Rev. 515–88 (2013).

24. *Id.* at 535–36 The federal EITC was expanded in 1984, 1986, 1990, and significantly in 1993. *See* Christine Scott, Cong. Research Serv., RL 31768, *The Earned Income Tax Credit (EITC): An Overview* 18 (2009).

25. The EITC first exceeded cash assistance under the Aid to Families with Dependent Children (traditional welfare known as "AFDC") entitlement program in terms of federal spending in 1992. *See* Jeffrey B. Liebman, National Bureau of Economic Research, *The Impact of the Earned Income Tax Credit on Incentives and Income Distribution*, in NBER Tax Policy and the Economy, Vol. 12 (1998). Comprehensive welfare reform in 1996, aimed at alleviating the problem of welfare dependency (conversion of AFDC to Temporary Aid to Needy Families or

"TANF"), only served to increase the size of federal EITC expenditures relative to traditional welfare cash assistance.

26. *See* 26 U.S.C. § 32(b).

27. Earned income is generally defined as wages, salaries, and tips. *See* 26 U.S.C. § 32(c)(2).

28. Generally speaking, qualifying children are those the taxpayer can claim as dependents for income tax purposes. *See* 26 U.S.C. § 32(c)(3).

29. For more information about state EITCs, *see* Nicholas Johnson & Erica Williams, Center on Budget and Policy Priorities, *A Hand Up: How State Earned Income Tax Credits Help Working Families Escape Poverty in 2011* (Apr. 18, 2011).

30. Kan. Stat. Ann. § 79–32,205 (2010).

31. *Id.*

32. Kan. Stat. Ann. § 60–2312 (West 2012) (individual debtors limited to Kansas exemptions plus federal exemptions in § 522(d)(10)).

ute that became effective immediately upon its publication in the Kansas register, and is now codified at K.S.A. § 60–2315. The exemption applies only in bankruptcy cases. It permits bankruptcy debtors, but not general debtors, to exempt the federal and Kansas EITCs.[33] The exemption provides as follows:

> An individual debtor under the federal bankruptcy reform act of 1978 (11 U.S.C. § 101 et seq.), may exempt the debtor's right to receive tax credits allowed pursuant to section 32 of the federal internal revenue code of 1986, as amended, and K.S.A. 79–32,205, and amendments thereto. An exemption pursuant to this section shall not exceed the maximum credit allowed to the debtor under section 32 of the federal internal revenue code of 1986, as amended, for one tax year. Nothing in this section shall be construed to limit the right

of offset, attachment or other process with respect to the earned income tax credit for the payment of child support or spousal maintenance.[34]

Several other states have enacted exemption statutes placing EITC tax refunds beyond the reach of a debtor's creditors.[35] Additionally, in other jurisdictions, bankruptcy and appellate courts have held that EITC tax refunds are exempt assets pursuant to a state's statute exempting public assistance.[36]

### 3. Constitutionality of K.S.A. § 60–2315

In February of last year, a panel of this Court ruled that the Kansas bankruptcy-only exemption for EITCs passes constitutional muster when it affirmed Judge Karlin's *Westby* decision.[37] Nevertheless, Williamson continues to argue on appeal here, as she did before Judge Karlin below, that K.S.A. § 60–2315 is unconstitutional.[38]

---

**33.** *Id.*

**34.** Kan. Stat. Ann. § 60–2315 (2011).

**35.** *See, e.g.,* Colo.Rev.Stat. § 13–54–102(1)(*o*) (2010) (exempting amount of any federal or state income tax refund "attributed to an earned income tax credit"); Fla. Stat. § 222.25(3) (2008) (exempting debtor's interest in refund pursuant to § 32 of the Internal Revenue Code); Ind.Code Ann. § 34–55–10–2(c)(11) (2012) (exempting interest in a refund or credit "received or to be received" under § 32 of the Internal Revenue Code, as well as Indiana earned income tax credit); La.Rev.Stat. Ann. § 13:3881(A)(6) (exempting "[f]ederal earned income tax credit, except for seizure by the Department of Revenue or arrears in child support payments"); Miss. Code Ann. § 85–3–1(i) (2008) (exempting an amount not to exceed $5,000 of "earned income tax credit proceeds"); Neb.Rev.Stat. § 25–1553 (2004) (exempting "full amount of any federal or state earned income tax credit refund"); Okla. Stat. tit. 31, § 1(Q23) (2005) (exempting "[a]ny amount received pursuant to the federal earned income tax credit").

**36.** *See, e.g., Hamm v. James (In re James),* 406 F.3d 1340 (11th Cir.2005) (EITC refund quali-

fied as "public assistance" and could be claimed as exempt under Ala.Code § 38–4–8 because it fit within the ordinary meaning and dictionary term of public assistance as government aid to needy persons); *In re Tomczyk,* 295 B.R. 894 (Bankr.D.Minn.2003) (EITC refunds exempt under Minn.Stat. § 550.37(14) as "relief based on need"). *But cf. In re Trudeau,* 237 B.R. 803, 807 (10th Cir. BAP 1999) (Wyoming public benefits exemption statute did not protect EITC because it is a "tax overpayment" and not a "welfare grant").

**37.** *In re Westby,* 486 B.R. 509, 515 (10th Cir. BAP 2013) (adopting and incorporating by reference the detailed legal reasoning and conclusions set forth in the bankruptcy court's memorandum opinion). The *Westby* panel consisted of Judges Terrence L. Michael (author), Michael E. Romero, and Howard R. Tallman, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Colorado, sitting by designation.

**38.** In her opening brief, Williamson states:

> The constitutionality of K.S.A. § 60–2315 was previously addressed by this court in *In re Westby,* 486 B.R. 509 (10th Cir. BAP

Additionally, Williamson continues to argue that K.S.A. § 60–2315 and § 507 are in conflict,[39] an argument Judge Karlin and this Court also rejected in *Westby*.[40] Because this Court has agreed to be bound by its prior decisions,[41] these issues need not be revisited in the *Murray* appeal.[42] The Kansas exemption statute is not unconstitutional.

### B. Analysis of Trustees' § 544(a)(2) strong-arm rights and powers

As stated by Baer in his opening brief, the issue on appeal is whether the bankruptcy court "erred when it determined that K.S.A. 60–2315 prevents a trustee from exercising his hypothetical rights as a creditor, under 11 U.S.C. § 544(a)(2), to execute upon property available to prepetition judgment creditors in the form of earned income tax credits[.]"[43] The strong-arm statute grants a trustee the following powers in § 544(a)(2):

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, *the rights and powers of,* or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

. . .

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, *at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied* at such time, whether or not such a creditor exists[.][44]

In support of their argument that they can reach the Debtors' EITC refunds through their § 544(a)(2) powers, the Trustees rely primarily, as they did before the bankrupt-

2013). A review of that decision indicates that the Court made the same misstep as other courts which have considered the constitutionality of state enacted bankruptcy-only statutes in that it failed [to] recognize the ambiguity in Section 522 and then neglected to consider the legislative history of the Bankruptcy Code to resolve such ambiguity. This analysis is critical to properly resolve this issue and results in a determination that Congress did not extend to the states the right to create bankruptcy-specific laws.
Williamson's Opening Brief at 20.

**39.** Specifically, Williamson argues:
    In *In re Westby*, this Court found no conflict between K.S.A. § 60–2315 and Section 507. 486 B.R. 509. The *In re Westby* court reached this conclusion after determining that because K.S.A. § 60–2315 operates to remove property from the estate there remained no property under that statute for which the Trustee was charged with distributing. 486 B.R. 509. The fallacy of this reasoning, however, is that K.S.A. § 60–2315 does, in fact, create an exception to the exemption whereby certain funds of the debtors are non-exempt. Specifically, K.S.A.

§ 60–2315 provides that debtors cannot exempt [EITC] funds when they are subject to attachment for the payment of child support or spousal maintenance.
*Id.* at 32.

**40.** *Westby*, 486 B.R. at 515.

**41.** *See In re Blagg*, 223 B.R. 795, 804 (10th Cir. BAP 1998) (citing *Starzynski v. Sequoia Forest Indus.*, 72 F.3d 816, 819 (10th Cir. 1995)) ("Our decision is dictated by the principle that we are bound by prior panel decisions. A panel cannot overrule the judgment of another panel of the court."); *see also In re Vaughan*, 311 B.R. 573, 585 (10th Cir. BAP 2004).

**42.** Even if we were to entertain these issues again, this Court does not agree that the *Westby* panel made a "misstep" as asserted by Williamson. To the contrary, its decision was well reasoned and legally sound.

**43.** Baer's Opening Brief at 1. *See also* Williamson's Opening Brief at 33.

**44.** 11 U.S.C. § 544(a)(2) (emphasis added).

cy court, on *In re Duffin*,[45] a 2011 decision of this Court. Such support is not simply misplaced, it is way off the mark.

In *Duffin*, a panel of this Court (hereafter, the "*Duffin* Court")[46] reversed a Utah bankruptcy court decision overruling a trustee's objection to the debtors' claimed state law exemption in their unmatured life insurance policies. The Utah statute at issue permits an individual to exempt "proceeds and avails of any unmatured life insurance contracts owned by the debtor ... *excluding any payments made on the contract during the one year immediately preceding a creditor's levy or execution*[.]" [47] The clause excluding the premium payments was added to the exemption by the Utah legislature in 2005. As the *Duffin* Court explained, the purpose of the exception is presumably "to prevent a debtor from front-loading assets into a life insurance policy to avoid the reach of creditors." [48]

In *Duffin*, the debtors' policies had a cash value of $8,500, and they had made monthly premium payments totaling $2,712 during the year prior to filing for Chapter 7 protection.[49] The trustee objected to debtors' exemption with respect to the $2,712 in premium payments. Strictly construing the exemption statute, the bankruptcy court overruled the trustee's objection, declining to interpret the phrase "preceding a creditor's levy or execution" to include additional triggering events such as filing for bankruptcy.

The bankruptcy court reasoned that the Utah legislature would have included bankruptcy in the exception to the life insurance exemption statute for premium payments if that was its intent because the legislature did so with respect to an exception to Utah's retirement plan asset exemption. The retirement plan exemption, essentially unchanged since 1989, specifically excludes "amounts contributed or benefits accrued by or on behalf of a debtor *within one year before the debtor files for bankruptcy*." [50] The bankruptcy court also stressed that a trustee's § 544(a) powers are hypothetical and based on fictional events, as opposed to a creditor's actual levy or execution as referred to in the exemption statute.[51] Further the bankruptcy court disagreed with the general proposition that § 544(a), in addition to granting avoidance powers, also provides a basis for a trustee to object to exemptions claimed by debtors.[52]

On appeal, the *Duffin* Court first acknowledged a split in authority over the expanse of a trustee's hypothetical powers under § 544(a)(2). It then concluded the Tenth Circuit Court of Appeals has rejected a narrow interpretation of § 544(a)(2) that would limit a trustee's powers to avoiding transfers. As support, the *Duffin* Court quoted from *Zilkha Energy Co. v. Leighton*, a 1990 Tenth Circuit decision:

> To understand the full import of § 544 one must first understand the power of a bankruptcy trustee to stand in the shoes of an [sic] hypothetical creditor of the

**45.** *In re Duffin*, 457 B.R. 820 (10th Cir. BAP 2011).

**46.** The *Duffin* panel consisted of Judges Tom R. Cornish, Elizabeth E. Brown (author), and Janice Miller Karlin.

**47.** Utah Code Ann. § 78B–5–505(1)(a)(xiii) (West 2013) (emphasis added).

**48.** *Duffin*, 457 B.R. at 829.

**49.** *Id.* at 821–22.

**50.** Utah Code Ann. § 78B–5–505(1)(a)(xiv) and (b)(ii) (West 2013) (emphasis added).

**51.** *Duffin*, 457 B.R. at 823.

**52.** *Id.*

debtor to effect a recovery from a third party. Simply stated, from the reservoir of equitable powers granted to the trustee to maximize the bankruptcy estate, Congress has fashioned a legal fiction. Not only is a trustee empowered to stand in the shoes of a debtor to set aside transfers to third parties, but the fiction permits the trustee also to assume the guise of a creditor with a judgment against the debtor. Under that guise, the trustee may invoke whatever remedies provided by state law to judgment lien creditors to satisfy judgments against the debtor.[53]

As a result, the *Duffin* Court determined that powers given to a trustee under § 544(a) are not limited to avoidance of transfers, but include broader "rights and powers."[54] It reasoned that although use of § 544(a)(2) to defeat exemptions is not common, such an exercise does not conflict with the spirit of § 522(b).[55]

Utah law clearly permits a creditor holding an execution returned unsatisfied to access premium payments made on life insurance policies during the year prior to its execution because such payments are specifically *excepted* from Utah's life insurance exemption. Applying the more expansive interpretation of § 544(a)(2), the *Duffin* Court held that because the trustee hypothetically stands in the shoes of a judgment lien creditor holding an unsatisfied execution, he too can reach the premium payments made within one year prior to filing of the petition in order to maximize the bankruptcy estate for the benefit of all creditors.[56] The *Duffin* Court concluded:

To hold otherwise would permit a Utah debtor to keep more of his life insurance assets if he filed bankruptcy, than if he tries to work through his financial problems and stay out of bankruptcy. Why would the Utah legislature want to effectively encourage bankruptcy filings by granting a more expansive exemption to a debtor in bankruptcy, while refusing that same exemption to a debtor who stays out of bankruptcy? Allowing a debtor to avoid his creditors by shielding assets in bankruptcy, when he could not do so outside of bankruptcy, makes no policy sense. We decline to read the Utah statute to achieve such a result.[57]

As Judge Karlin suggested in her Memorandum Opinion, the Trustees' § 544(a)(2) argument in the cases before us is based on "selectively quoted language" from *Duffin*.[58]

■ We see no application of the *Duffin* Court's reasoning to the facts before us in these appeals. Simply put, in *Duffin*, the trustee was not attempting to reach the exempt life insurance policies, but instead premium payments made on life insurance policies that were expressly *excepted from exemption* under the Utah statute, and therefore properly property of the estate. In other words, *Duffin* permitted the use of § 544(a)(2) to defeat an improperly claimed exemption. On the other hand, in the present appeals, the Trustees are claiming their § 544(a)(2) powers entitle them to reach *exempt* assets that are not property of the estate, i.e., the Debtors' EITC refunds, which the Kansas legisla-

---

**53.** *Id.* at 828 (quoting *Zilkha Energy Co. v. Leighton,* 920 F.2d 1520, 1523 (10th Cir. 1990)).

**54.** *Id.*

**55.** *Id.* at 829.

**56.** *Id.*

**57.** *Id.*

**58.** *Memorandum Opinion* at 6 n. 19, *in* Murray App. at 201.

ture has ostensibly determined to be an integral part of a bankruptcy debtor's fresh start.[59]

The Trustees' counter-argument to the distinction between property belonging to the estate and exempt property is that the Debtors' EITC refunds, like other property that is exempt, are property of the estate until claimed and allowed as exempt, and that their § 544(a)(2) powers arise at the commencement of the action.[60] According to the Trustees, "[a]s a result, in certain situations, 11 U.S.C. § 544 is a viable and effective method for the trustee to defeat a claimed exemption because of the broad 'rights and powers' Congress has granted to trustees to maximize the amounts that are distributed to creditors from the bankruptcy estate."[61] Trustees neglect, however, to define "certain situations" in any meaningful way, and though it is technically true that exempt property is initially property of the estate,[62] their argument manipulates a timing discrepancy to exalt form over substance. Were we to adopt the Trustees' line of reasoning and allow them to use § 544(a)(2) to defeat Debtors' exemptions of their EITC refunds, then those strong-arm powers could be used to defeat *any exemption,* whether improperly or *properly claimed* by a debtor, including homestead, motor vehicle,

and tools of the trade exemptions. The only thing unique about the exemption of property claimed by Debtors here is that the Kansas legislature has determined it should be allowed only to a particular class of debtors, i.e., bankruptcy debtors. In this regard, the Trustees' argument is, to some extent, only a variation of their argument that the Kansas EITC exemption is unconstitutional, which has previously been rejected.

Additionally, the Trustees' argument that *Duffin* should be applied in these cases so that debtors and creditors inside and outside of bankruptcy are treated the same may be based on a faulty premise. Williamson asserts that "[j]ust as Utah creditors may execute upon certain life insurance funds, Kansas creditors may execute upon tax refund deposits which include the [EITC]," [63] and Baer argues that "any judgment creditor, absent a bankruptcy filing, would be left unimpeded by K.S.A. 60–2315 from reaching an individual's [EITC] to satisfy a judgment." [64] However, as pointed out by Judge Nugent in the *In re EITC Cases*,[65] and by the Kansas District Court in its affirmance of that decision, an executing creditor outside of bankruptcy cannot effectively attach an EITC refund held by the IRS or the Kan-

---

**59.** That is not to say that the reasoning and result in *Duffin* could never have application to facts involving the EITC exemption. As the bankruptcy court described, *Duffin* might be implicated if debtors were to claim an exemption of EITC refunds with respect to two tax years because the statute expressly limits the exemption to a refund for one tax year. *Memorandum Opinion* at 8 n. 27, *in* Murray App. at 203.

**60.** In *Williamson v. Jones (In re Montgomery),* 224 F.3d 1193 (10th Cir.2000), the Tenth Circuit ruled that § 541 includes a debtor's EITC refund notwithstanding that the bankruptcy petition was filed prior to the end of the tax year at which time the EITC refund was a contingent interest. However, in that case,

the only issue was whether an EITC refund became part of the bankruptcy estate pursuant to § 541, and did not involve any type of EITC exemption.

**61.** Baer's Opening Brief at 5.

**62.** 11 U.S.C. § 522(b) & (*l*); *In re Campbell,* 313 B.R. 313, 321 (10th Cir. BAP 2004).

**63.** Williamson's Opening Brief at 35.

**64.** Baer's Opening Brief at 6 (emphasis omitted).

**65.** 477 B.R. 791 (Bankr.D.Kan.2012).

sas Department of Revenue.[66]

The Trustees argue that a Kansas judgment creditor can garnish a bank account into which a debtor has deposited his EITC refund[67] but that is quite different from the ability of a Chapter 7 trustee to directly intercept an EITC refund by filing a turnover request with the IRS. Though there is no legislative history to explain the Kansas legislature's intention behind enactment of the EITC exemption, on its face, the statute obviously favors bankruptcy debtors. However, in reality, it is at least theoretically possible that the bankruptcy-only exemption may have the de facto effect of treating non-bankruptcy debtors and bankruptcy debtors more similarly rather than disparately. This is because prior to its enactment, bankruptcy trustees had a much more effective mechanism for reaching EITC refunds of bankruptcy debtors than did general creditors for reaching those of non-bankruptcy debtors.[68]

### C. Murray's Motion for Fees

Following oral argument in her appeal, Murray filed a Motion for Fees pursuant to Federal Rule of Bankruptcy Procedure 8020 ("Rule 8020").[69] Rule 8020 provides as follows:

> If a district court or bankruptcy appellate panel determines that an appeal from an order, judgment, or decree of a bankruptcy judge is frivolous, it may, after a separately filed motion or notice from the district court or bankruptcy appellate panel and reasonable opportunity to respond, award just damages and single or double costs to the appellee.[70]

Murray contends the appeal is frivolous primarily because Williamson's arguments regarding the constitutionality of K.S.A. § 60–2315 had already been rejected by this Court when it affirmed the bankruptcy court's rulings in *Westby*. Further, Murray asserts that since Williamson appealed this Court's *Westby* decision to the Tenth Circuit, but voluntarily dismissed it about six weeks later,[71] she unnecessarily caused Murray and her counsel to "reinvent the wheel on issues with which they were unfamiliar" in the absence of any "developments that would warrant [Williamson's] decision to take a second bite of

66. *In re Lea*, No. 11–11131, 2013 WL 4431267 (D.Kan. Aug. 16, 2013) (citing *Brockelman v. Brockelman*, 478 F.Supp. 141 (D.Kan.1979)).

67. Baer's Opening Brief at 7 (citing Kan. Stat. Ann. § 60–733).

68. This does not include governmental creditors who have other means of intercepting tax refunds to offset certain other types of debts. *See e.g., Sorenson v. Sec'y of Treasury*, 475 U.S. 851, 106 S.Ct. 1600, 89 L.Ed.2d 855 (1986) (state agencies can intercept taxpayers' EITC refunds to pay past-due child support).

69. *Docket # 37*, filed November 15, 2013. Murray requests total fees and expenses in the amount of $11,257.15.

70. The language of Rule 8020 is intentionally parallel to that of Federal Rule of Appellate Procedure 38. *See* Advisory Committee Notes to Rule 8020. As a result, courts considering sanctions pursuant to Rule 8020 are guided by cases applying Appellate Rule 38. *In re Schachtele*, 343 B.R. 661, 666 (8th Cir. BAP 2006).

71. *See Order* entered Mar. 29, 2013 (10th Cir. Case No. 13–3044) (granting Appellant's motion to dismiss). We note that although the arguments regarding the constitutionality of K.S.A. § 60–2315 had also been rejected by Judge Robert E. Nugent in the *In re EITC Cases* and appealed to the United States District Court for the District of Kansas, the District Court's decision affirming the bankruptcy court's decision was not issued until August 20, 2013, which was subsequent to briefing in this appeal.

the apple." [72] With respect to Williamson's § 544(a)(2) argument, Murray avers that it was "without any legal support or precedent." [73]

■ There is no established formulation of "frivolity" for purposes of Rule 8020, but this Court has stated that an appeal is frivolous pursuant to Rule 8020 "if the result is obvious or the arguments are wholly without merit." [74] In addition, an appeal may be deemed frivolous even if the underlying issues are genuinely appealable, but the manner in which the appeal is litigated is frivolous. [75] Some of the factors that courts have considered in analyzing the frivolity of an appeal include an appellant's bad faith, whether the argument presented on appeal is meritless in toto or only partially frivolous, whether the appellant's argument cogently addresses the issues on appeal, fails to cite any authority, cites inapplicable authority, makes unsubstantiated factual assertions or bare legal conclusions, or misrepresents the record. [76]

■ We are not unsympathetic to Murray's position that Williamson is relitigating issues recently decided by this Court at her expense. However, bankruptcy-only exemptions are still the exception as opposed to the norm, and as far as we know, no other state exemption for the EITC is limited to bankruptcy debtors only. The United States Supreme Court has yet to weigh in on the issue of bankruptcy-only exemptions, and Williamson was not challenging existing Tenth Circuit precedent. Further, as evidenced by numerous court decisions and journal articles, reasonable minds educated and experienced in bankruptcy law may differ as to the constitutionality of these provisions. [77] Therefore, we cannot say that the appeal is frivolous or that Williamson litigated it in a frivolous manner, and accordingly, we deny Murray's Motion for Fees.

## V. CONCLUSION

Fundamentally, these appeals concern the same issue that most bankruptcy cases do: balancing the rights of creditors to satisfaction of debt from the debtors' assets, with the rights of honest but unfortunate debtors to a fresh start. [78] Exemptions are one of the Bankruptcy Code's primary ways of assisting debtors to a fresh start. The Bankruptcy Code provides default rules defining exempt property, but § 522(b)(2) permits states to opt out of these rules and substitute their own. Kansas has elected to opt out and thus codifies its own exempt property rules. In 2011, the Kansas legislature determined that creditors should not be able to reach the EITC refunds of bankruptcy debtors.

---

72. *Memorandum in Support of Motion for Fees* at 3–4.

73. *Id.* at 6.

74. *Joseph v. Lindsey (In re Lindsey)*, 229 B.R. 797, 802 (10th Cir. BAP 1999).

75. *In re Sokolik*, 635 F.3d 261, 270–71 (7th Cir.2011).

76. *In re Kusek*, 461 B.R. 691, 698 (1st Cir. BAP 2011).

77. *See, e.g., In re Schafer*, 455 B.R. 590 (6th Cir. BAP 2011), *rev'd*, 689 F.3d 601 (6th Cir. 2012), *cert. denied*, —— U.S. ——, 133 S.Ct. 1244, 185 L.Ed.2d 179 (2013); *In re Applebaum*, 422 B.R. 684, 693 (9th Cir. BAP 2009) (Markell, J., dissenting); Heather M. Forrest, *Are Bankruptcy–Specific State Exemptions Constitutional?*, 31–NOV Am. Bankr.Inst. J. 14 (November 2012).

78. In these cases, however, we note it may be payment of the Trustees, as opposed to the creditors, that has been the motivation for this litigation. According to the Beaches, after Baer's commission and fees, there will likely be less than one penny on the dollar available for distribution to creditors. Beaches Response Brief at 3.

The EITC refund, though technically categorized as a tax overpayment in tax code parlance, nevertheless results in cash assistance to lower-income taxpayers with dependent children.[79] The "ordering of competing social policies is a quintessentially legislative function." [80] In this instance, Congress has permitted state legislatures to determine their own exemptions, and the Kansas legislature has deemed that a bankruptcy debtor's fresh start should include the right to receive a tax refund attributable to the EITC. Therefore, the bankruptcy court's orders overruling the Trustee's objections to the Debtors' exemptions are AFFIRMED.

**79.** This Court has previously ruled that EITC refunds are tax overpayments and not primarily intended as a welfare grant. *In re Dickerson*, 227 B.R. 742, 745 (10th Cir. BAP 1998) (citing *Sorenson v. Sec'y of Treasury*, 475 U.S. 851, 858, 106 S.Ct. 1600, 89 L.Ed.2d 855 (1986)). The nature and purpose of the EITC may have evolved over time, but that issue is not germane to the issue on appeal here.

**80.** *Id.* at 747 (quoting *Sorenson*, 475 U.S. at 865, 106 S.Ct. 1600).