**FILED**

**U.S. Bankruptcy Appellate Panel
of the Tenth Circuit**

**April 11, 2017**

**Blaine F. Bates
Clerk**

NOT FOR PUBLICATION[*]

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE TENTH CIRCUIT

_____

IN RE BILLY RUSSELL DAMPIER, JR.,

Debtor.

_____

MEDICAL LIEN MANAGEMENT, INC.
and CREDIT INVESTMENTS, INC.,

Plaintiffs – Appellees,

v.

BILLY RUSSELL DAMPIER, JR.,

Defendant – Appellant.

BAP No. CO-16-020

Bankr. No. 14-24526
Adv. No. 15-01028
Chapter 7

OPINION

_____

Appeal from the United States Bankruptcy Court
for the District of Colorado

_____

Before **KARLIN**, Chief Judge, **JACOBVITZ**, and **MOSIER**, Bankruptcy Judges.

_____

**MOSIER**, Bankruptcy Judge.

_____

As part of a state criminal sentence for theft, Billy Russell Dampier, Jr. was ordered

to pay restitution to the State of Colorado. The Bankruptcy Court declared Dampier's

---

[*]    This unpublished opinion may be cited for its persuasive value, but is not
precedential, except under the doctrines of law of the case, claim preclusion, and issue
preclusion. 10th Cir. BAP L.R. 8026-6.

criminal restitution debt to be nondischargeable pursuant to 11 U.S.C. § 523(a)(7).[1] Dampier contends that the Bankruptcy Court committed legal error because the plain meaning of § 523(a)(7) does not bar discharge of his restitution debt. We find Dampier's restitution debt is excepted from discharge under § 523(a)(7). On that basis, we affirm.

## I.    FACTUAL AND PROCEDURAL HISTORY

Dampier stole money from his employers, Credit Investments, Inc. and Medical Lien Management, Inc. (Appellees) and was formally charged with theft and forgery.[2] Dampier pleaded guilty to criminal theft under Colorado law. As part of his criminal sentence, the state criminal court ordered Dampier to pay restitution (Restitution Order) for Credit Investments in the amount of $108,343.11 and for Medical Lien Management in the amount of $88,348.58.

After he was sentenced, Dampier filed his chapter 7 petition and the Appellees filed their complaint[3] objecting to the discharge of Dampier's debts pursuant to § 523(a)(2)(A), (a)(4), (a)(6), and (a)(7). Appellees subsequently amended the complaint.[4] Dampier answered the amended complaint[5] denying the allegations relating to § 523(a)(2)(A),

---

[1]    All future references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated.

[2]    Complaint at 5, *in* Appellant's App. at 14.

[3]    Appellant's App. at 10.

[4]    Appellant's App. at 40.

[5]    Appellant's App. at 52.

(a)(4), and (a)(6).[6] With respect to the § 523(a)(7) claims, Dampier admitted that he was charged with and had pleaded guilty to criminal theft and that he was ordered to pay restitution totaling $196,691,[7] but he denied the Restitution Order was a nondischargeable fine, penalty, or forfeiture payable to and for the benefit of a governmental unit within the meaning of § 523(a)(7).[8]

The Appellees moved for summary judgment on their § 523(a)(6) and (a)(7) claims.[9] The Bankruptcy Court found the restitution debt was excepted from discharge under § 523(a)(7) and entered an order granting partial summary judgment (Summary Judgment Order).[10] In light of this finding, the Bankruptcy Court concluded that it was not necessary to address the Appellees' remaining § 523(a)(6) argument, and also noted that the Appellees' claims under § 523(a)(2)(A) and (a)(4) were "similarly duplicative."[11] At the Bankruptcy Court's request, the Appellees filed a motion to dismiss their § 523(a)(2)(A), (a)(4), and (a)(6) claims,[12] and the Bankruptcy Court entered an order

---

[6]     Answer to Amended Complaint at 2, *in* Appellant's App. at 53.

[7]     *Id. in* Appellant's App. at 53.

[8]     *Id. in* Appellant's App. at 53.

[9]     Motion for Partial Summary Judgment on the Fourth and Fifth Claims for Relief in Amended Complaint Pursuant to Fed. R. Civ. P. 56 *in* Appellant's App. at 60; Supplement to Motion for Partial Summary Judgment on the Fourth and Fifth Claims for Relief in Amended Complaint Pursuant to Fed. R. Civ. P. 56 *in* Appellant's App. at 76; Amended Motion for Partial Summary Judgment on the Fourth and Fifth Claims for Relief in Amended Complaint Pursuant to Fed. R. Civ. P. 56 *in* Appellant's App. at 82.

[10]     Appellant's App. at 251.

[11]     Summary Judgment Order at 3, *in* Appellant's App. at 253.

[12]     Motion to Dismiss Counts I, II, III, and IV *in* Appellant's App. at 254.

3

dismissing the § 523(a)(2)(A), (a)(4), and (a)(6) claims (Dismissal Order) "without prejudice."[13] Dampier timely appealed the Summary Judgment Order and the Dismissal Order.[14]

## II.    JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction to hear appeals of final orders.[15] "An order granting summary judgment disposing of [a] plaintiff's claims against [a] defendant is a final order for purposes of appeal."[16] Although the Summary Judgment Order was a partial summary judgment, it disposed of the Appellees' § 523(a)(7) claims and required the dismissal of the remaining causes of action. The Summary Judgment Order and the Dismissal Order are final and appealable. We review an order granting summary judgment *de novo*.[17]

## III.    DISCUSSION

### A.    The Appellees' § 523(a)(7) Claim.

The relevant portion of § 523(a)(7) provides that a discharge in bankruptcy does not discharge an individual debtor from any debt "to the extent such debt is for a fine, penalty,

---

[13]    Appellant's App. at 261.

[14]    Notice of Appeal and Statement of Election *in* Appellant's App. at 262.

[15]    28 U.S.C. § 158(a)(1), (b)(1), and (c)(1).

[16]    *Expert S. Tulsa, LLC v. Cornerstone Creek Partners, LLC (In re Expert S. Tulsa, LLC)*, 534 B.R. 400, 407 (10th Cir. BAP 2015) (citing *Tanner v. Barber (In re Barber)*, 326 B.R. 463, 466 (10th Cir. BAP 2005)), *aff'd*, 842 F.3d 1293 (10th Cir. 2016).

[17]    *Russell v. Tadlock (In re Tadlock)*, 338 B.R. 436, 438 (10th Cir. BAP 2006).

4

or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss . . . ."[18]

### 1. The Applicable Law.

The Supreme Court addressed § 523(a)(7) in *Kelly v. Robinson*.[19] In *Kelly*, the debtor was convicted of larceny and the sentencing judge ordered the debtor to make restitution as a condition of probation. The debtor subsequently filed for bankruptcy under chapter 7. The Supreme Court held "that § 523(a)(7) preserves from discharge any condition a state criminal court imposes as part of a criminal sentence,"[20] and determined that restitution obligations, imposed as conditions of probation, are nondischargeable in proceedings under chapter 7 of the Code. *Kelly's* holding reaches beyond its facts,[21] but the Supreme Court clearly explained the basis for its decision. It noted that its interpretation of the Code "must reflect . . . a deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings. The right to formulate and enforce penal sanctions is an important aspect of the sovereignty retained by the States."[22]

"Section 523(a)(7) protects traditional criminal fines; it codifies the judicially created exception to discharge for fines."[23] The *Kelly* Court observed that restitution

---

[18]    § 523(a)(7).

[19]    479 U.S. 36 (1986).

[20]    *Id*. at 50.

[21]    *Troff v. Utah (In re Troff)*, 488 F.3d 1237, 1240 (10th Cir. 2007).

[22]    *Kelly*, 479 U.S. at 47.

differs from traditional fines in two major ways: restitution (1) is forwarded to the victim, and (2) may be calculated based on the harm the defendant has caused.[24] But the Supreme Court concluded that these two differences make no difference under § 523(a)(7)— section 523(a)(7) does not allow the "discharge of a criminal judgment that takes the form of restitution."[25] The Court elaborated:

> The criminal justice system is not operated primarily for the benefit of victims, but for the benefit of society as a whole. Thus, it is concerned not only with punishing the offender, but also with rehabilitating him. Although restitution does resemble a judgment "for the benefit of" the victim, the context in which it is imposed undermines that conclusion. The victim has no control over the amount of restitution awarded or over the decision to award restitution. Moreover, the decision to impose restitution generally does not turn on the victim's injury, but on the penal goals of the State . . . .[26]

Unlike obligations that arise out of contractual, statutory or common law duties, restitution is "rooted in the traditional responsibility of a state to protect its citizens . . . and to rehabilitate an offender."[27] Although restitution orders may result in compensation to victims, they are not assessed for that purpose; they are assessed because of the penal and rehabilitative interests of the state.[28] And those interests are what "place restitution orders within the meaning of § 523(a)(7)."[29]

---

[23] *Id.* at 51.

[24] *Id.* at 51-52.

[25] *Id.* at 52.

[26] *Id.*

[27] *Id.* (citation and internal quotation marks omitted).

[28] *Id.* at 53.

[29] *Id.*

The United States Court of Appeals for the Tenth Circuit addressed § 523(a)(7) in *Troff v. Utah (In re Troff)*.[30] In *Troff*, the debtor pleaded guilty to arson, and the sentencing judge ordered the debtor to make restitution as a condition of probation. After the debtor completed his probation, his restitution obligation was converted to a civil judgment made payable to the victim. The debtor subsequently filed for bankruptcy under chapter 7. The Tenth Circuit determined that it was bound by *Kelly* and held that a criminal restitution obligation that was imposed as part of the Utah state criminal sentence was nondischargeable under § 523(a)(7).[31] The *Kelly* Court's method of statutory interpretation emphasized the policy considerations behind § 523(a)(7). Although the Tenth Circuit noted that a "strict plain meaning reading" of § 523(a)(7) might have strengthened Troff's argument,[32] it concluded that "the *Kelly* Court's reasoning made clear that it would apply the rule to *any* obligation imposed as part of a criminal sentence."[33] The Tenth Circuit also observed that it was not free to disregard *Kelly* because it "'considers itself bound by Supreme Court dicta almost as by the Court's outright holdings. . . .' Thus, *Kelly*—dicta and all—applies."[34]

---

[30]    488 F.3d 1237 (10th Cir. 2007).

[31]    *Id*. at 1243.

[32]    *Id.* at 1239. Troff's argument was that his restitution payments, which were made to the state but eventually forwarded to the victim, were not "payable to and for the benefit of a governmental unit." Accordingly, the restitution debt did not come within the plain meaning of § 523(a)(7) and was dischargeable. *Id.*

[33]    *Id.* at 1240 (emphasis added).

[34]    *Id*. at 1241 (quoting *Gaylor v. United States*, 74 F.3d 214, 217 (10th Cir. 1996)).

7

Under the pertinent Utah law, restitution "is not merely 'compensation for [a victim's] actual pecuniary loss' under § 523(a)(7); rather, it serves the goals of the state's criminal justice system."[35] The Tenth Circuit noted that:

> [c]ourt-ordered restitution . . . takes into account not only the amount necessary to make a victim whole, but also the financial burden on the defendant, his ability to pay on an installment basis, and "the *rehabilitative effect* on the defendant of the payment of restitution and the method of payment."[36]

Following *Kelly*, the Tenth Circuit stated that the focus of court-ordered restitution is "on the State's interests in rehabilitation and punishment, rather than the victim's desire for compensation."[37] The fact that Troff's restitution obligation was converted to a civil judgment payable to the victim made no difference.

### 2. Application of Controlling Law.

Here, the Bankruptcy Court concluded that it was bound by *Kelly* and *Troff* and found Dampier's "payment obligation under the Restitution Order to be nondischargeable under § 523(a)(7), as a matter of law."[38] Dampier argues that *Kelly* and *Troff* are not binding because Colorado's restitution laws are different. He contends that under a strict plain meaning reading of the statute, the Restitution Order is expressly excluded from § 523(a)(7). But "the Supreme Court's decision in *Kelly* makes clear that we must look

---

[35]     *Id.*

[36]     *Id.* (citing Utah Code Ann. § 76-3-201(8)(c) (1999)).

[37]     *Id.* (quoting *Kelly v. Robinson*, 479 U.S. 36, 53 (1986)).

[38]     Summary Judgment Order at 2-3, *in* Appellant's App. at 252-53.

beyond such a reading to federalism concerns and to the history of this statute."[39] The *Kelly* Court concluded that any restitution obligation imposed as part of a state criminal sentence confers a benefit on the government and is not assessed for the benefit of the victim.[40] And like the *Troff* Court, we are bound by the Supreme Court's holdings and dicta and are not free to disregard *Kelly*.[41] A state's penal and rehabilitative interests in criminal proceedings "are sufficient to place restitution orders within the meaning of § 523(a)(7)."[42]

Dampier attempts to distinguish his case by characterizing the Restitution Order as being "payable to, and wholly under the control of, a non-governmental entity."[43] Dampier's characterization is wrong; the Restitution Order is not wholly under the control of a non-governmental entity. Criminal restitution orders may only be obtained by the government, and victims have no control over the amount of restitution awarded or the decision to impose restitution. The judgment creditor is the State of Colorado,[44] and the Colorado State Judicial Department is responsible for collection of the restitution orders.[45] Among other things, the Judicial Department has the responsibility to conduct an initial

---

[39] *Troff*, 488 F.3d at 1239.

[40] *Kelly*, 479 U.S. at 53.

[41] *Troff*, 488 F.3d at 1241 (quoting *Gaylor v. United States*, 74 F.3d 214, 217 (10th Cir. 1996)).

[42] *Kelly*, 479 U.S. at 53.

[43] Appellant's Br. at 26.

[44] Appellant's App. at 119-127.

[45] Colo. Rev. Stat. §§ 16-18.5-104.

collections investigation, establish payment schedules, file transcripts of restitution orders with various agencies to create liens, and monitor payment of restitution orders.[46]

Under Colorado law, restitution is defined as compensation for actual pecuniary loss[47] and is "a final civil judgment in favor of the *state* and any victim."[48] But the fact that a restitution order may be enforced by victims or may result in compensation to victims does not change the fundamental nature and purpose of the restitution. As the Supreme Court explained, the context in which restitution is imposed undermines the conclusion that restitution is for the benefit of the victim. The criminal justice system is operated for the benefit of society as a whole and is concerned not only with punishing the offender, but also with rehabilitating him. Restitution is "rooted in [this] traditional responsibility of a state to protect its citizens . . . and to rehabilitate an offender."[49]

Restitution orders are a statutorily created penalty created under the Colorado Criminal Code.[50] The State of Colorado has declared that restitution "is a mechanism for

---

[46]    *Id.*

[47]    Colo. Rev. Stat. § 18-1.3-602(3)(a). Restitution "means any pecuniary loss suffered by a victim and includes but is not limited to all out-of-pocket expenses, interest, loss of use of money, anticipated future expenses, rewards paid by victims . . . , and other losses or injuries proximately caused by an offender's conduct and that can be reasonably calculated and recompensed in money." *Id.*

[48]    Colo. Rev. Stat. § 18-1.3-603(4)(a)(I) (emphasis added).

[49]    *Kelly v. Robinson*, 479 U.S. 36, 52 (1986) (citation and internal quotation marks omitted).

[50]    *See* Colo. Rev. Stat. § 18-1.3-601.

the rehabilitation of offenders" and "will aid the offender in reintegration as a productive member of society."[51] The state court clearly weighed these considerations in sentencing Dampier, as it sought to impose "the appropriate sentence, given [the] individual, given these circumstances."[52] Furthermore, the criminal sentence included two years of work-release and ten years of probation, which was conditioned on payment of the court-ordered restitution and gave Dampier the opportunity to prove his stated "desire to pay back restitution and to make good on what he has done wrong."[53]

The Restitution Order here is a penalty, payable to the State of Colorado, not for its actual pecuniary loss, but to benefit the State in its effort to protect its citizens and to rehabilitate Mr. Dampier. Although the Appellees may ultimately receive the restitution payments through their own collection efforts, that fact makes no difference. The Restitution Order focused on punishment and rehabilitation and is clearly within the meaning of § 523(a)(7), and Dampier's "attempt to discharge the debt is squarely within the cross-hairs of the Supreme Court's decision in *Kelly*."[54] The Bankruptcy Court appropriately considered and applied the holdings in *Kelly* and *Troff*, and concluded it was bound by those decisions. We agree.

---

[51] Colo. Rev. Stat. § 18-1.3-601(1)(c), (2).

[52] Exhibit 13, Summary Judgment Motion at 52, *in* Appellant's App. at 196.

[53] *Id*. at 53-54, *in* Appellant's App. at 197-98. We also note the Tenth Circuit's recognition that holding a restitution obligation to the victim is dischargeable would "disrupt two decades of Congressional reliance on the notion that the [*Kelly*] holding applied whether the crime's victim was the government or a private individual." *Troff v. Utah (In re Troff)*, 488 F.3d 1237, 1242 (10th Cir. 2007).

[54] *Troff*, 488 F.3d at 1241.

**B.     The Appeal of the Dismissal Order is Moot.**

Dampier also argues that the Bankruptcy Court erred in dismissing the remaining causes of action "without prejudice" and that, if the Court reverses, the Appellees are precluded from refiling any of the dismissed claims.[55] Any dispute over the Dismissal Order has been rendered moot by this Court's affirmance of the Summary Judgment Order. Accordingly, we decline to address this issue on appeal.

**C.     Appellees' Motion for Attorney's Fees.**

The Appellees seek an award of attorney's fees under Fed. R. Bankr. P. 8020.[56] Rule 8020 allows the Court to "award just damages and . . . costs" to an appellee if the Court finds that the appeal is frivolous. Although Rule 8020 does not establish a standard for frivolity, this Court has held that an appeal is frivolous "if the result is obvious or the arguments are wholly without merit."[57] We deny Appellees' motion for two reasons. First, we do not find Appellant's argument that the Colorado statute defining restitution as compensation for actual pecuniary loss is different from the statutes at issue in *Kelly* and *Troff* to be frivolous. Second, Appellant's argument that the Court should not deviate from the plain language of § 523(a)(7) is not wholly without merit. Judge Tymkovich's concurring opinion in *Troff* took issue with the Supreme Court's decision in *Kelly*, which

---

[55]     Appellant's Br. at 58.

[56]     Motion for Attorney's Fees Pursuant to Fed. R. Bankr. P. 8020, BAP ECF No. 26.

[57]     *Williamson v. Murray (In re Murray)*, 506 B.R. 129, 141 (10th Cir. BAP 2014) (quoting *Joseph v. Lindsey (In re Lindsey)*, 229 B.R. 797, 802 (10th Cir. BAP 1999)). "Some of the factors that courts have considered in analyzing the frivolity of an appeal include an appellant's bad faith, [and] whether the argument presented on appeal is meritless in toto or only partially frivolous . . . ." *Id.*

"discount[ed] the statutory text for policy considerations."[58] Judge Tymkovich argued that "subject to the vagaries of stare decisis, the Supreme Court could and should correct its error by . . . narrowing the holding of *Kelly* to the statutory text."[59] Accordingly, the Appellees' request for attorney's fees is DENIED.

## IV.    CONCLUSION

The Bankruptcy Court did not err in granting summary judgment in favor of the Appellees on their § 523(a)(7) claim. Accordingly, the Bankruptcy Court's decision is AFFIRMED.

---

[58]    *Troff*, 488 F.3d at 1243 (Tymkovich, J., *concurring*).

[59]    *Id.* at 1243-44 (Tymkovich, J., *concurring*).